# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6107-CIV-FERGUSON/SNOW

STEVE HARRIS,

    Plaintiff,

v.

DAYTON HUDSON CORPORATION
d/b/a TARGET STORES,

    Defendant.

_____/



## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AND INCORPORATED MEMORANDUM OF LAW

Defendant, **TARGET CORPORATION** ("Target"), pursuant to Fed. R. Civ. P. 56, moves the Court to enter an Order granting summary judgment against Plaintiff **STEVE HARRIS** ("Plaintiff").

## SUMMARY OF ARGUMENT[1]

### A.    Target Hires Plaintiff.

In June 1994, Plaintiff, an African-American, interviewed for a position at Target. Terry Gillespie, Target's Regional Human Resource Manager, who is white, was one of the Target managers who interviewed Plaintiff. Upon completing the interview process, Gillespie offered Plaintiff an Assistant Store Team Leader position (Assistant Store Manager) at Target.

On June 9, 1994, Plaintiff commenced his employment at Target store T638, located in Boca Raton, Florida, as an Assistant Store Team Leader-in-Training (Assistant Store Manager in Training). After completing the initial training, Plaintiff was promoted to Assistant Store Team Leader (Assistant Store Manager) on August 1, 1994.

On December 28, 1997, Target promoted Plaintiff to Store Team Leader (Store Manager) of

---

[1] The page references for the depositions and exhibits supporting the Summary of Argument are reflected in Target's Rule 7.5 Statement, which is contemporaneously filed herewith.

Target Store T392, located in Greenacres, Florida. The transfer was for a short-term period because Target Store T392 was closing. On April 1, 1998, Target transferred Plaintiff to Target Store T393 (the "Store"), located in Deerfield Beach, Florida, as the Store Team Leader (Store Manager).

As Store Manager, Plaintiff was responsible for a multi-million dollar business. Plaintiff oversaw all Store funds and budgets. Plaintiff was required to demonstrate exemplary conduct and leadership within the Store. Plaintiff was required to direct the merchandising, operation, and personnel functions of the Store toward attaining maximum profits, sales, and return on investment.

**B.    The Falsified Receipt.**

In January 1999, Plaintiff contacted Mark Hastings, Target's District Manager, so that he could authorize a going-away dinner party for Evan Feldman, an Executive Team Leader, who had resigned. After Hastings approved the dinner party, Plaintiff obtained $500.00 from Don Fankhauser, the Store's Security Manager, to cover the cost of Feldman's going-away dinner party.

Feldman's going-away dinner party was held on January 29, 1999, at Shooter's, a Fort Lauderdale restaurant, and was attended by Plaintiff, Shannon Tetrault, Don Fankhauser, and Evan Feldman. According to Plaintiff's deposition testimony, he paid $135.87 for the dinner party and left approximately a $25 tip; thus, Plaintiff testified that he paid a total of $160 for Feldman's dinner party. However, on the Shooter's receipt submitted to Target, Plaintiff handwrote and added $135.87 (the dinner's cost) and $160.00 (as a "tip") to equal $295.87. Pursuant to the receipt, Plaintiff made it appear that he had paid $295.87 for the dinner party.

Plaintiff gave the Shooter's receipt (which reflected a $295.87 total) and returned the unspent dinner-party funds to the Store's service desk supervisor, Caryn Knapp. Knapp retained $205, the cash difference between $500 and $295.87 (the amount Plaintiff wrote on the receipt). Plaintiff thus improperly kept approximately $135 for himself by overstating the "tip" at Shooter's.

**C.    Target's Investigation.**

Soon thereafter, it was brought to Gillespie's attention that Plaintiff had received $500 for Feldman's dinner party and had spent $295.87. Pursuant to the Shooter's Receipt, it appeared that Plaintiff had spent $135.87 in the dinner and had left a gratuity of $160. Target viewed a $160 gratuity on a $135.87 dinner as an exorbitant tip.

Target commenced an investigation involving the Shooter's receipt through the Store's Security Manager, Fankhauser. Fankhauser telephoned the Shooter's waiter who stated that Plaintiff had not left a $160 tip, but rather a $25 tip. Since Plaintiff supposedly incurred costs of $160 (in dinner and gratuity) and only returned $205 to Target, the investigation revealed that there was a

$135 discrepancy. Consequently, Target decided to investigate Plaintiff further, and the investigation revealed that Plaintiff had committed numerous other improprieties and violations of Target's policies.

In February 1999, Plaintiff attended a meeting in which Mark Hastings, Doug Barth (Target's District Asset Protection Team Leader), and Gillespie were present. The meeting was held to discuss the Shooter's Receipt discrepancy and the other improprieties that the investigation had uncovered.

Gillespie questioned Plaintiff about the Shooter's Receipt discrepancy. Plaintiff stated that he did not know how much money he had returned to Target; he simply gave the service desk employee all the money that was in his pocket. Plaintiff admitted that he added $135.87 (the dinner's cost) and $160.00 to equal $295.87. He admitted that the receipt wrongfully reflected $295.87. When asked why he added $160 to the Shooter's Receipt, Plaintiff had the following nonsensical explanation. "I was trying to figure out what amount of money should go back to the store so I was calculating."

Gillespie also questioned Plaintiff about his company-issued American Express corporate charge card. Target provides American Express corporate charge cards for business purposes only. However, Plaintiff was using his company-issued American Express corporate charge card exclusively for personal purposes. In addition, Plaintiff admitted that the company-issued American Express corporate charge card account was in arrears. Plaintiff was required to pay all outstanding amounts on his company-issued American Express corporate charge card on a monthly basis. However, Plaintiff failed to pay his balance on a monthly basis as required and had an outstanding balance of $777.50. This credit card issue was linked with Plaintiff's earlier delinquency problems with his personal Target credit card. Plaintiff's personal Target credit card account had been closed due to his failure to pay the outstanding amount owed, and Plaintiff took over a year to pay the outstanding and delinquent balance.

Gillespie questioned Plaintiff about an employee's complaints that Plaintiff was borrowing money from employees. Plaintiff denied this issue despite an employee's complaint to management about Plaintiff's requests to borrow money for his personal use.

At the end of the meeting, Plaintiff was placed on a leave of absence pending a further investigation of the above referenced discrepancies and violations of Target's policies.[2] On Friday,

---

[2] Target's investigation revealed numerous other violations which Plaintiff disputes. For purposes of this summary judgment motion only, Target will concede the disputed violations.

March 5, 1999, Plaintiff met with Gillespie (appearing by telephone), Hastings, and Barth. During the second meeting, Plaintiff was again asked about the Shooter's Receipt. Plaintiff still could not explain why $135 was missing. Consequently, Plaintiff was terminated because he posed a security risk and had violated Target's policies.

### D.  This Lawsuit.

Plaintiff filed the instant lawsuit alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") (Count I) and 42 U.S.C. § 1981 ("Section 1981") (Count II). Specifically, Plaintiff claims that Target discriminated against him because of his race. Plaintiff also alleges a claim for libel and slander (Count III).

The Court should grant summary judgment on the Title VII and § 1981 claims (Counts I and II) because Plaintiff has not established a *prima facie* case demonstrating that Target discriminated against him because of his race. Plaintiff cannot establish that he was qualified for the Store Manager position or demonstrate that Target treated similarly situated non-Black employees more favorably. Moreover, Target has presented several legitimate, nondiscriminatory reasons for its actions, as set forth below, in that Plaintiff was a security risk who had violated numerous Target policies. Finally, Plaintiff has not, and cannot, establish that his termination was a pretext for discrimination.

The Court should grant summary judgment on the libel and slander claim (Count III). Plaintiff has presented no evidence that Target made any statement to any prospective employer of Plaintiff. Moreover, any statement that Target made to a prospective employer is presumed to be in good faith and immune from liability pursuant to § 768.095, Fla. Stat. Plaintiff has not met his burden of demonstrating by clear and convincing evidence that Target's statement to any prospective employer was knowingly false, deliberately misleading, or rendered with a malicious purpose.

### ARGUMENT

### I.   SUMMARY JUDGMENT STANDARD.

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Although the movant bears the burden of establishing that there is no genuine issue as to any material fact, a moving party that does not have the ultimate burden of proof on the claim at issue need only "point out" that no evidence exists to support the opposing

4

party's case, and the moving party need not produce evidence negating the opponent's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 323-25, (1986). Once the moving party has pointed out the absence of such evidence, the burden shifts to the non-movant to come forward with sufficient evidence on each element that must be proved. Id. at 323-325. The nonmoving party must produce evidence that is "significantly probative," and may not prevail if it produces "merely colorable" evidence. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250(1986).

## II. PLAINTIFF HAS NOT ESTABLISHED A RACE DISCRIMINATION CLAIM UNDER TITLE VII OR § 1981.

Title VII and § 1981 prohibit an employer from discriminating against an employee on the basis of the employee's race. 42 U.S.C. § 2000e-2(a); 42 U.S.C. § 1981. Where no evidence of direct discrimination exists (as in the instant case), Title VII employs the McDonnell Douglas three-part test. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Section 1981 utilizes Title VII's analytical framework to determine whether Plaintiff meets his burden of proving discrimination. Vincent v. Wells Fargo Guard Services, Inc. of Fla., 3 F. Supp. 2d 1405, 1413 (S.D. Fla. 1998).

Plaintiff bears the initial burden of establishing a *prima facie* case of race discrimination. McDonnell Douglas, 411 U.S. at 802. If Plaintiff establishes a *prima facie* case, the burden shifts to Target to provide a legitimate, nondiscriminatory reason for the challenged employment action. Id. If Target offers a legitimate, nondiscriminatory reason, the presumption of discrimination disappears and Plaintiff must come forward with evidence that the proffered reasons are pretextual. Id.

Plaintiff can only overcome a summary judgment motion by either "persuading the court that a discriminatory motive more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997). Even if Plaintiff demonstrates that Target's articulated nondiscriminatory reason is false, Plaintiff must still prove that his adverse employment action was truly based upon unlawful discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993).

In the instant case, Plaintiff alleges that Target discriminated against him because of his race since he was terminated for being a security risk and violating Target's policies. For the reasons set forth below, the Court should grant summary judgment.

5

### A. Plaintiff Cannot Establish A *Prima Facie* Case Of Race Discrimination.

To establish a *prima facie* case of racial disparate treatment, Plaintiff must prove that:

(1) [Plaintiff] belongs to a [protected group] (2) [Plaintiff] was subjected to adverse job action; (3) [Plaintiff's] *employer treated similarly situated employees outside of [his] classification more favorably;* and (4) [Plaintiff] was *qualified to do the job.*

Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) (emphasis added). In the instant case, Plaintiff cannot establish a *prima facie* case of race discrimination because he was not qualified for the Store Manager position or has demonstrated that Target treated similarly situated non-Black employees more favorably.

#### 1. Plaintiff Was Not Qualified For The Store Manager Position

A Target Store Manager has an immense amount of responsibility in that s/he is in charge of an entire Target store and its employees. (Ex A, Gillespie Aff. ¶ 3.) A Target Store Manager controls a multi-million dollar business, oversees all store funds, and manages budgets. Id. A Target Store Manager must execute the highest level of leadership and example within the store. Id. He or she must direct the store's merchandising, operations, and personnel functions toward attaining maximum profits, sales, and return on investment. Id.; Ex. A(1), Store Team Leader Job Description.) Plaintiff admits that a Store Manager has a higher degree of responsibility than someone who is not in management. (Plaintiff Dep. at 136-37.)

Plaintiff was not qualified to remain as the Store Manager once he became a security risk. Target discovered that Plaintiff was a security risk when it investigated the Shooter's Receipt discrepancy and then uncovered that Plaintiff had committed the following improprieties:

- *Carelessly returning an incorrect amount of money owed to Target.* Plaintiff testified that he was unaware of how much money he returned to Caryn Knapp, the service desk employee, when he provided the Shooter's Receipt and the unspent dinner-party money. (Plaintiff Dep. at 77-83.) According to Plaintiff, he simply gave Knapp whatever amount of money that was in his pocket. Id. at 80-83.

- *Falsifying a restaurant receipt (or providing a misleading restaurant receipt) that reflected the wrong total.* Plaintiff admitted that he added $160.00 to the dinner's cost to equal $295.87 on the Shooter's Receipt. (Plaintiff Dep. at 78-80.) Plaintiff testified that these figures are *in his own handwriting.* Id. at 78. When asked why he added $160 to the Shooter's Receipt, Plaintiff simply stated: "I was trying to figure out what amount of money should go back to the store so I was calculating. . . . Yeah. Yes, sorry." Id. at 78-80. Clearly, Plaintiff's nonsensical response shows that he had no explanation why the Shooter's Receipt erroneously reflected $295.87.

6

- ***When asked why there was discrepancy in the Shooter's Receipt, Plaintiff could not even identify how much money he returned or why there was a discrepancy.*** (Plaintiff Dep. at 83, 84-85.)

- ***Improperly using the company-issued American Express charge card for personal purchases.*** Target issues American Express corporate charge cards for business purposes only. (Plaintiff Dep. at 127-28; Ex A, Gillespie Aff. ¶ 6.) Target's Policy Manual states that, "Credit cards issued by Target to its team members are for business expenses only." (Ex A(3), Target Policy Manual.) However, Plaintiff exclusively used his company-issued American Express corporate charge card for personal charges. (Ex. A(4), American Express Expense Report covering period from April 27 to December 22, 1998.)

- ***Improperly failing to pay the monthly balance on the company-issued American Express charge card.*** Plaintiff testified that the company-issued American Express corporate charge card account was in arrears and that he had failed to make monthly payments. (Plaintiff Dep. at 124-26; Ex. A, Gillespie Aff. ¶ 7.) As all American Express card holders know, Plaintiff was required to pay all outstanding amounts on his company-issued American Express corporate charge card on a monthly basis. (Ex. A, Gillespie Aff. ¶ 7.) By February 23, 1999, Plaintiff had incurred an outstanding balance of $777.50 in his company-issued American Express corporate card . (Ex. A(5), Expense Reimbursement Report.)

- ***Being in arrears on his personal Target credit card to the point that his Target account was closed.*** Plaintiff testified that his Target account had been in arrears. (Plaintiff Dep. at 120-21.) On August 28, 1996, Plaintiff's personal Target credit card account was closed due to Plaintiff's failure to pay the outstanding amount due. (Ex. A(6), Target credit card bill dated 8/28/96.)

- ***Taking over a year to repay the outstanding balance on his personal Target credit card.*** Over a year after his Target account was closed, Plaintiff paid the delinquent balance on his closed Target credit card account. (Ex. A(7), Target credit card bill dated 10/28/97.)

- ***Borrowing money from employees and using employees to do his personal chores.*** Plaintiff borrowed money from, at least, one store employee, Paula Layne, and did not repay the money owed. (Ex A(8), Layne Statement.) At one point, Plaintiff owed Layne approximately $220.00. Id. At the time of the investigation, Plaintiff owed Layne, $180.00. Id. Plaintiff also asked Layne, while working, to run a personal chore for him and take him to the Mercedes Benz dealership to pick up his Mercedes Benz which was being "detailed." Id.

A Store Manager who, in violation of company policy, (i) presents a false and misleading receipt to Target, (ii) retains money based on a false and misleading receipt, (iii) cannot determine how much company money he returned to the Store when confronted with the receipt discrepancy, (iv) improperly uses his corporate charge card for personal purposes, (v) goes into arrears on amounts owed on his corporate charge card in violation of company policy, (vi) forces subordinates

7

to lend him money for his personal use and assist him with personal errands, (vii) had his Target credit card account closed for failure to pay amounts owed, and (viii) delays over a year to repay his closed Target credit card account clearly is a security risk that cannot be entrusted to oversee and supervise a multi-million dollar store. As Plaintiff testified, he was ultimately accountable for the money in the Store. (Plaintiff Dep. at 137-38.) Unfortunately, Plaintiff did not follow Target's policies as to himself and, at no point, did anything to correct his improprieties (such a returning the $135 discrepancy): he simply continued committing more policy violations until caught. When considering these circumstances, Target assessed that Plaintiff should not be the person responsible for handling its multi-million dollar store.

To be qualified for a job, the employee must show that he was performing his job "at a level which met his employer's legitimate expectations." Vickers v. Federal Express Corp., Case No. 98-2112-Hoeveler, 2000 WL 1725356, *5 (S.D. Fla. Oct. 26, 2000). It is irrelevant that Plaintiff believes he was qualified and deems the above-listed violations "insignificant." Rather, the Court should concentrate as to what Gillespie, the decisionmaker, believed when investigating and analyzing Plaintiff's improprieties and incredible explanations. As one court stated:

> [Plaintiff] argues that she performed well in her job and offers evidence in an effort to support this contention, including e-mails and memoranda written by [Plaintiff] herself and statements allegedly made by her co-workers. In doing so, [Plaintiff] can prove only the unremarkable fact that she and [her supervisor] disagreed about the quality of her work. But we have repeatedly held that in a wrongful discharge action "'[i]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff.'"

Hawkins v. PepsiCo, Inc., 203 F.3d 274, 280 (4th Cir. 2000) (affirming summary judgment to employer).

Following Target's investigation, Gillespie clearly believed that Plaintiff was a security risk to Target. His subjective, good faith belief was also a reasonable one, based on the documentary evidence. Accordingly, the Court should grant summary judgment on Plaintiff's race discrimination claims because Plaintiff was not qualified for the Store Manager position.

### 2. Plaintiff Cannot Identify A Similarly Situated Non-Black Employee Who Was Treated More Favorably.

To survive summary judgment, Plaintiff *must* identify a similarly situated non-Black employee who received more favorable treatment. Walker v. Mortham, 158 F.3d 1177, 1193 (11th Cir. 1998); Holifield, 115 F.3d at 1562; St. Hilaire v. The Pep Boys-- Manny, Moe & Jack, 73 F.

SHUTTS & BOWEN LLP / 1500 MIAMI CENTER / 201 SOUTH BISCAYNE BOULEVARD / MIAMI, FLORIDA 33131 / (305) 358-6300

Supp. 2d 1350, 1361 (S.D. Fla. 1999) (granting summary judgment because plaintiff did not show that there were similarly-situated employees who were treated differently). "The adequacy of the comparators is crucial." Marshall v. Western Grain Co., Inc., 838 F.2d 1165, 1168 (11th Cir. 1988). When determining whether employees are similarly situated,"it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Holifield, 115 F.3d at 1562 (11th Cir. 1997). The comparators "must have dealt with the same supervisor, have been subject to the same standards, and must have also engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment." Weaver v. Tech Data Corp., 66 F. Supp. 2d 1258, 1270 (M.D. Fla. 1999). It is crucial for the Court to consider the "nature of the offenses committed and the nature of the punishments imposed." Jones v. Gerwens, 874 F.2d 1534, 1539-40 (11th Cir. 1989); see Holifield, 115 F.3d at 1562.

In this case, Plaintiff has not identified a single non-Black Store Manager who was not terminated upon becoming a security risk. Specifically, Plaintiff has not identified any non-Black Store Manager who engaged in the same or similar conduct and committed the above referenced breaches of policy delineated in Section II(A)(1), *supra,* and was not terminated. As the Eleventh Circuit has stated:

> *We require that the quantity and quality of the comparators misconduct be nearly identical to prevent courts from second-guessing employer's reasonable decisions and confusing apples and oranges.*

Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999) (emphasis added and citations omitted).

Because Plaintiff did not satisfy the burden of showing that non-Black similarly situated employees were treated more favorably, Plaintiff's case cannot succeed. See Sistrunk v. Neumann, 13 Fla. L. Weekly Fed. D337, D338 (S.D. Fla. March 31, 2000) (granting employer's motion for summary judgment on disparate treatment claim because plaintiff could not identify any similarly situated non-Black employee). Where the plaintiff in a race discrimination claim fails to show that similarly situated non-Black employees were treated more favorably, and where no other evidence of discrimination is present, summary judgment is proper. Holifield, 115 F.3d at 1562. Accordingly, the Court should grant summary judgment on Plaintiff's race claims.

### B. Assuming, *Arguendo*, That Plaintiff Establishes A *Prima Facie* Case, Target's Actions Were Taken For Legitimate, Nondiscriminatory Reasons.

Assuming Plaintiff establishes a *prima facie* case of race discrimination, the burden of production (but not proof) shifts to Target to show a legitimate, nondiscriminatory reason for any adverse employment action that it took. McDonnell Douglas 411 U.S. at 802. "Because the defendant need only produce, not prove, a non-discriminatory reason, this burden is 'exceedingly light.'" Barnes v. Cochran, 944 F. Supp. 897, 901 (S.D. Fla. 1996).

In some cases, the defendant's evidence of a legitimate, nondiscriminatory reason for its actions may be *"so strong as to rebut completely the inference raised by the plaintiff's prima facie case."* Grigsby v. Reynolds Metals Co., 821 F.2d 590, 569 (11th Cir. 1987) (emphasis added); Avril v. Village South, Inc., 934 F. Supp. 412, 417 (S.D. Fla. 1996). As the Eleventh Circuit states:

> [A] plaintiff may not in all cases merely rest on the laurels of her *prima facie* case in the face of powerful justification evidence offered by the defendant. Without more, the evidence constituting [Plaintiff's] *prima facie* case is not sufficient to create an issue of fact in light of the compelling evidence of lawful motive presented by [Defendant].

Grigsby, 821 F.2d at 569.

#### 1. Plaintiff Was Terminated Because He Was A Security Risk And Violated Target's Policies.

As set forth in Section II(A)(1), *supra*, Plaintiff was terminated, first and foremost, because he was a security risk and violated numerous policies. Pursuant to Target's policies, a manager who is a security risk may be immediately terminated since Target considers this to be "gross misconduct." (Ex. A, Gillespie Aff. ¶ 12; Ex A(9), Target's Policy on Gross Misconduct; Ex. A(10), Target Executive Team Member Handbook.) As to gross misconduct, Target's policy defines detrimental behavior as:

> Personal conduct which substantially impairs the team member's ability to function effectively as a Target team member by reason of its detrimental effect either on the team member's relationship with other team members or on the business or reputation of the company, whether or not it occurs on the premises. It also includes conduct as .... becoming a security risk.

(Ex. A(9), Target's Policy on Gross Misconduct.) See also Ex. A(10), Target Executive Team Member Handbook, at 48 (employee may be immediately terminated if s/he undertakes "Personal behavior that has a detrimental effect on the team member's relationship with Target, or on Target's business or reputation.") Clearly, Plaintiff's personal conduct through his untruths and inability to

10

follow company procedures, particularly when dealing with company funds, demonstrates that he was a security risk and his job performance was unsatisfactory. Moreover, Plaintiff's request to at least one employee to borrow money (still unpaid) and to assist him with personal errands is unprofessional and hurts morale. As such, Target has presented yet another 3 legitimate, nondiscriminatory reasons for Plaintiff's termination.

Moreover, Plaintiff was terminated because he had violated other Target policies. First, an employee who falsifies documents relied upon by Target may be immediately terminated. (Ex. A(10), Target Executive Team Member Handbook, at 48) (immediate termination if employee engages in "Falsifying company documents or documents relied upon by the company – for example ... reimbursement forms."). In addition, an employee whose Target credit card account is not in good standing can be terminated:

> Similarly, if you make purchases with Target's credit cards, be sure to keep your account in good standing. If you become delinquent, it can mean discipline or termination.

Id. at 47. In this case, Plaintiff violated Target's policies when his Target credit card account was closed, delayed payment on the Target credit card account for over one year, and presented the false/misleading Shooter's Receipt to Target. Hence, Target additionally terminated Plaintiff for these legitimate, nondiscriminatory reasons.

Finally, Plaintiff was terminated because the above improprieties made his performance questionable and unsatisfactory. The instant case is similar to Kounelis v. Mount Sinai Medical Center of Greater Miami, Inc., 987 F. Supp. 1452 (S.D. Fla. 1997), aff'd, 166 F.3d 352 (1998), an ADEA case, where the plaintiff was terminated for making "input mistakes with the I-9 immigration information." Id. at 1457. This Court found that the employer "has met its burden of articulating a legitimate, nondiscriminatory reason for discharging [the plaintiff]." Id. This Court stated: "An employer's good faith belief that an employee's performance is unsatisfactory constitutes a legitimate, nondiscriminatory reason for termination." Id.

In sum, Plaintiff was terminated because Gillespie – in good faith and pursuant to the improprieties and violations that were uncovered – believed that Plaintiff was no longer qualified to perform the Store Manager's position. Plaintiff's disagreement with Gillespie's conclusion does not transform this difference into discrimination. As one court stated:

> [Plaintiff] attempts to frame [his supervisor's] behavior in racial terms by charging that [the supervisor] did not subject any of [Plaintiff's] white peers to similarly poor treatment. But [Plaintiff] presents no facts that tend to show this allegedly disparate

11

treatment was due to race rather than [the supervisor's] admittedly low regard for [Plaintiff's] individual performance. [Plaintiff] has demonstrated that she and [her supervisor] did not see eye-to-eye. But this showing of a difference of opinion, coupled with [Plaintiff's] conclusory allegations of racism, cannot reasonably support the conclusion that [Plaintiff's] discharge was motivated by racial animus. For "a plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action." And no court sits to arbitrate mere differences of opinion between employees and their supervisors.

Hawkins, 203 F.3d at 281 (citations omitted). Accordingly, the Court should grant summary judgment since Target has provided legitimate, nondiscriminatory reasons for its actions.

### 2. Whether Plaintiff's Termination Was Fair Is Irrelevant.

Whether Plaintiff's termination was "fair" is not an issue before this Court. As the Eleventh Circuit has stated:

> We have emphatically held that a defendant may terminate an employee for a good or bad reason without violating federal law. We are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged decision.

Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999); Schoenfeld v. Babbitt, 168 F.3d 1257, 1269 (11th Cir. 1999) ("As we have previously explained, it is not the role of federal courts to second-guess the hiring [or termination] decisions of business entities. The reason offered by an employer for an action does not have to be a reason that the judge or jurors would act on or approve.").

The Eleventh Circuit has held that courts do not sit "as a super-personnel department that re-examines an entity's business decisions." Alphin v. Sears, Roebuck & Co., 940 F.2d 1497, 1501 (11th Cir. 1991). Title VII is not "meant to be a shield against harsh treatment at the workplace and does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under these rules." Nix v. WLCY Radio/Rahall Communications, 738 F. 2d 1181, 1187 (11th Cir. 1984). "The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." Id.

Gillespie's conclusions about Plaintiff's improprieties constitute legitimate, nondiscriminatory reasons for Plaintiff's termination. Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1228 (11th Cir. 1993). Accordingly, the Court should grant summary judgment.

12

## C.  Plaintiff Has Presented No Evidence Of Pretext.

To survive a summary judgment motion, Plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could find them unworthy of credence." Id. *Failure to produce sufficient evidence of pretext dictates the entry of judgment against the employee.* Simmons v Camden County Board of Education, 757 F.2d 1187 (11th Cir. 1985).

Plaintiff's subjective opinion or speculation that Target's actions were discriminatory, without supportive evidence, is insufficient to establish pretext and avoid summary judgment. Carter v. City of Miami, 870 F.2d 578, 585 (11th Cir. 1989) (holding that conclusory and generalized allegations of racial bias such as "there was a racially biased attitude by management towards minority black employees" were properly struck by the district court). "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered ... extensive evidence of legitimate, non-discriminatory reasons for its actions." Isenbergh v. Knight-Ridder Newspaper Sales, Inc., 97 F.3d 436, 443-44 (11th Cir. 1996).

In the instant case, Plaintiff has not offered any evidence establishing pretext. Instead, Plaintiff's only "evidence" is his speculation based on two alleged incidents. For the reasons set forth below, Plaintiff has not demonstrated that Target's reasons are pretextual based on these two alleged incidents.

### 1.  Van Savage's Speculation Is Not Evidence Of Discrimination.

Plaintiff alleges that Robert Van Savage, a store manager at T638 (Boca Raton store where Plaintiff first worked), *before September 1996,* stated that Plaintiff had to be a "good old boy" to work at Target. (Plaintiff Dep. at 170-72.) According to Plaintiff:

> He explained to me after I had gone to a particular, what they call round-robin meeting. That was to see if I was able to be promotable to store manager. When I came back from that meeting, he had spoken to me about it and said it wasn't looking like it was in my favor; that you did not have somebody on your side, and you need to be part of the good old boy team in order to be successful with Target.

(Plaintiff Dep. at 170-72.)

***First***, Plaintiff admits that the alleged comment was made before September 1996, which is nearly three years before Plaintiff filed his charge of discrimination in May 1999. "Under Title VII

13

... no plaintiff can recover for any employment discrimination that happened more than 300 days before she brings the charge." EEOC v. Ford Motor Credit Co., 26 F.3d 44, 46 (6th Cir. 1994); 42 U.S.C. § 2000e-5(e). The Eleventh Circuit states:

> According to the statute [Title VII], [plaintiff] may only charge Title VII violations that occurred within 300 days of her complaint. The company notes that [plaintiff] filed her EEOC complaint in June 1984; thus, she is entitled to relief only for actions occurring after August of 1983.

EEOC v. Reichhold Chemicals, Inc., 988 F.2d 1564, 1571 n.6 (11th Cir. 1993); Butts v. City of New York Dept. of Housing, 990 F.2d 1397, 1401 (2d Cir. 1993) (discriminatory incidents occurring in 1987 and 1988 were time-barred because plaintiff filed an EEOC charge in November 1989); Speer v. Rand McNally & Co., 123 F.3d 658, 662 (7th Cir. 1997) ("Because [plaintiff] filed her sexual harassment charges with the EEOC on July 28, 1995, any alleged conduct before October 1, 1994, is time-barred and cannot form the basis of a sexual harassment suit."); Dudley v. Metro-Dade County, 989 F. Supp. 1192, 1198-99 (S.D. Fla. 1997) (barring harassment incidents occurring 300 days before filing charge). Since Van Savage's alleged comment was made more than 300 days before the Plaintiff's charge's filing date, it cannot be litigated because it is time-barred.

***Second,*** assuming, *arguendo*, that Van Savage's alleged comment was discriminatory, it is, at most, a stray remark made by a non-decisionmaker at a store where Plaintiff worked in the distant past. Comments by non-decisionmakers do not raise an inference of discrimination and are irrelevant in a discrimination claim. Mitchell v. USBI Co., 186 F.3d 1352, 1355 (11th Cir. 1999); see Standard v. A.B.E.L. Services, Inc., 161 F.3d 1318, 1329-30 (11th Cir. 1998) (statement by non-decisionmaker that "older people have more go wrong" was not probative of discriminatory intent); Mauter v. Hardy Corp., 825 F.2d 1554, 1558 (11th Cir. 1987) (statement by non-decisionmaker that "[t]he Hardy Corporation was going to weed out the old ones" did not raise a genuine issue of material fact regarding discriminatory intent). ***Comments by non-decisionmakers cannot constitute direct or circumstantial evidence of discrimination as a matter of law.*** See Holifield v. Reno, 115 F.3d 1555, 1564 (11th Cir. 1997) (to prove a claim of race discrimination, plaintiff must show that person making adverse employment decision had bias against the plaintiff because of race); Mayfield v. Patterson Pump Co., 101 F.3d 1371 (11th Cir. 1996); Trotter v. Board of Trustees of University of Alabama, 91 F.3d 1449, 1454, 1456 (11th Cir. 1996) (discriminatory comments made by a person not involved in the challenged decision are not probative of discrimination).

***Third,*** assuming Van Savage implied that "good old boy" meant non-Black, Van Savage's

14

speculation does not mean that Gillespie and other Target managers are racist. An employee's conjecture about a manager's beliefs does not transform the employee's comment into discrimination by the manager. See Pasqua v. Metropolitan Life Ins. Co., 101 F.3d 514, 517 (7th Cir. 1996) (holding that rumors are nondiscriminatory due to "the very nature of such gossip). ***Furthermore, even assuming that the comment was made, its value is highly questionable since Plaintiff was later promoted.*** (Plaintiff Dep. at 172.)

### 2. Fankhauser's Isolated Comment Is Not Evidence Of Discrimination.

As his alleged second discriminatory comment, Plaintiff claims that Fankhauser said the following:

Q. Were there any other statements that anybody at Target in management made to you?
A. Don Fankhauser.
\*\*\*\*
Q. What did he say?
A. He followed me -- he walked me out to my car, which was a Viper, and made the comment, "How does a black man afford to drive a Viper working at Target?"
Q. What did you say to him?
A. I asked him what he meant by, "a black man affording a Viper." He made the statement that, "It's a $70,000 vehicle, and I'm sure that's not what you make. How do you afford to drive a vehicle like that?" I then said to him, "How do you afford to drive a Corvette?" None of my business.
Q. Did he drive a Corvette?
A. At the time, no. But I heard that he had a Corvette.

(Plaintiff Dep. at 174.) Plaintiff admits that this was the ***only*** alleged discriminatory comment Fankhauser ever made to him. (Plaintiff Dep. at 175.)

***First,*** Fankhauser's alleged statement cannot be the basis of Plaintiff's discrimination claim because, like Van Savage, Fankhauser was not a decisionmaker. See cases cited in Section II(C)(1), *supra*.

***Second,*** Fankhauser's alleged comment has nothing to do with Plaintiff's termination. Rather, it is an isolated incident and, as such, cannot establish discrimination. Rea v. Martin Marietta Corp., 29 F.3d 1450, 1457 (10th Cir. 1994) ("Isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions.").

Finally, Fankhauser's comment, at most, was rude. However, mere rudeness cannot be transformed into a cause of action for discrimination.

15

### 3. Conclusion.

Other than the above two comments, Plaintiff testified that there were no other comments made by any other Target manager. (Plaintiff Dep. at 175.) In sum, Plaintiff has not provided a shred of evidence to corroborate his allegations of discrimination, or to show that Target's legitimate, nondiscriminatory reasons are false.

In Vincent v. Wells Fargo Guard Services, Inc. of Fla., 3 F. Supp. 2d 1405, 1413 (S.D. Fla. 1998), a black security guard sued his employer under § 1981 and Title VII claiming race discrimination. This Court found that the plaintiff's lack of evidence– other than his testimony – precluded the entry of summary judgment:

> [Plaintiff], however, provided the Court with nothing more than unsupported, uncorroborated allegations. It is undisputed that a nonmovant may not rely on mere allegations to avoid entry of summary judgment. . . . In sum, [Plaintiff's] claims of racial discrimination boil down to uncorroborated allegations and [Plaintiff's] opinion that he was discriminated against on the basis of race and/or national origin. As the Eleventh Circuit has noted, mere allegations are insufficient to survive summary judgment, and a plaintiff's opinion that he has been discriminated against does not suffice to create a *prima facie* case of race discrimination,

Id. at 1415-16. Since Plaintiff has not presented any evidence demonstrating that Target's nondiscriminatory reasons were pretextual, the Court should grant summary judgment.

### D.    **Plaintiff Has Not Established Intentional Discrimination Or Discriminatory Animus.**

Plaintiff is required to prove discriminatory animus and intentional discrimination by Target. Joseph v. Publix Super Markets, Inc., 983 F. Supp. 1431, 1444 (S.D. Fla. 1997); Edwards v. Wallace Comm. College, 49 F.3d 1517, 1520 (11th Cir. 1995). To prove intentional discrimination under Title VII and § 1981, Plaintiff must establish that (1) Target's discriminatory animus towards him was based on his race and (2) a causal link between his race and the termination. Stimpson v. City of Tuscaloosa, 186 F.3d 1328, 1331 (11th Cir. 1999); Martinez v. U.S. Sugar Corp., 880 F. Supp. 773, 778 (M.D. Fla. 1995).

In the instant case, Plaintiff has not presented any evidence of discriminatory animus by Gillespie. In fact, Gillespie, who terminated Plaintiff, *is the same person (or "actor") who hired and promoted Plaintiff.* Gillespie terminated Plaintiff because he was a security risk who had committed numerous improprieties. See Williams v. Vitro Services Corp, 144 F.3d 1438, 1442 (11th Cir. 1998). Where the individual responsible for hiring an employee also made the termination

decision towards the employee, the Eleventh Circuit states that, "these facts may give rise to a *permissible inference* that no discriminatory animus motivated [the employer's actions]." Id.; see Smith v. Florida Dept of Transportation, 13 Fla. L. Weekly Fed. D 117, 118 (M.D. Fla. Nov. 30, 1999) (where one of the individuals making the promotion determination was involved in past promotion, the inference falls on the employer that there is no discrimination); Evans v. Technologies Applications & Service Co., 80 F.3d 954, 959 (4th Cir. 1996) ("[B]ecause Houseman is the same person who hired Evans, there is a powerful inference that the failure to promote her was not motivated by discriminatory animus."); E.E.O.C. v. Our Lady of Resurrection Med. Ctr., 77 F.3d 145, 152 (7th Cir. 1996) ("If Boettcher wished to discriminate against Braddy because of her race, she could have refused to hire her in the first place, or she could have discharged her because of her deficient qualifications. Boettcher did neither. . . . The same hirer/firer inference has strong presumptive value."); Proud v. Stone, 945 F.2d 796, 797 (4th Cir. 1991) ("[I]n cases where the hirer and firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer."); Buhrmaster v. Overnite Transp. Co., 61 F.3d 461, 464 (6th Cir. 1995) ("An individual who is willing to hire and promote a person of a certain class is unlikely to fire them simply because they are a member of that class. This general principle applies regardless of whether the class is age, race, sex, or some other protected classification.").

Plaintiff lacks proof that Gillespie held any discriminatory animus towards him. Plaintiff's only "evidence" is his uncorroborated speculation. For the foregoing reasons, the Court should find that Plaintiff has not established intentional discrimination by Target.

## III.   PLAINTIFF HAS NOT ESTABLISHED A LIBEL OR SLANDER CLAIM.

In Count III, Plaintiff claims that Target has libeled and slandered him to future employers by "justifying its unlawful termination of the Plaintiff." (Compl., at misnumbered ¶ 45.) Plaintiff is clearly wrong.

***First,*** Plaintiff has no evidence that Target made any statement about him to any prospective employer. Plaintiff must provide some evidence of such a statement, since a defamation claim must include "a false and defamatory statement concerning another." Linafelt v. Beverly Enterprises-Florida, Inc., 745 So. 2d 386, 388-89 (Fla. 1st DCA 1999).

***Second,*** any statement that Target made to a prospective employer is presumed to be in good faith pursuant to § 768.095, Fla. Stat. (Employer immunity from liability; disclosure of information

regarding former or current employees). Section 768.095 states in relevant part:

> An employer who discloses information about a former or current employee to a prospective employer of the former or current employee upon request of the prospective employer or of the former or current employee is immune from civil liability for such disclosure or its consequences unless it is shown by clear and convincing evidence that the information disclosed by the former or current employer was knowingly false or violated any civil right of the former or current employee protected under chapter 760.

§ 768.095, Fla. Stat. If a statement made by Target is both false and defamatory, the burden is on Plaintiff to demonstrate by clear and convincing evidence that Target's statement to the prospective employer was "knowingly false," "deliberately misleading," or "rendered with a malicious purpose." Linafelt, 745 So. 2d at 388-89. In the instant case, Plaintiff lacks any evidence that Target made any statement to any prospective employer of Plaintiff that was "knowingly false," "deliberately misleading," or "rendered with a malicious purpose."

For the reasons set forth above, the Court should grant summary judgment to Target as to Count III.

## CONCLUSION

Defendant, TARGET CORPORATION, respectfully requests that the Court enter Summary Judgment on all Counts in its favor and against Plaintiff.

Respectfully submitted,

SHUTTS & BOWEN LLP
Attorneys for Defendant
201 South Biscayne Boulevard
1500 Miami Center
Miami, Florida 33131
(305) 358-6300
(305) 347-7386 (facsimile)

By: _____

Sheila M. Cesarano
Florida Bar Number 708364
Rene Gonzalez-LLorens
Florida Bar Number 0053790

**CERTIFICATE OF SERVICE**

      **I HEREBY CERTIFY** that a true and correct copy of the foregoing was hand-delivered on this __5__ day of February, 2001, to **RICHARD J. BURTON, ESQ.**, Richard J. Burton & Associates, P.A., 18305 Biscayne Boulevard, Suite 300, Miami, Florida 33160.

                                                            _____
                                                                 OF COUNSEL

MIADOCS 366554 2 RGL