**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 00-6107-CIV-FERGUSON/SNOW

STEVE HARRIS,
    Plaintiff,
vs.

TARGET CORPORATION,
    Defendant.
_____/

**AFFIDAVIT OF STEVE HARRIS IN OPPOSITION TO TARGET**
**CORPORATION, MOTION FOR SUMMARY JUDGEMENT**

STATE OF FLORIDA    )
                            ) ss:
COUNTY OF MIAMI-DADE  )

The witness, Steve Harris, first being duly sworn by me, the undersigned authority, a Notary Public within and for the state and county last aforesaid, states as follows:

1. My name is Steve Harris, and I have personal knowledge of the facts contained herein. The facts are as set forth in our Complaint.
2. I have reviewed the facts contained in defendant's motion for summary judgment, accompanied by the Affidavits supporting Target Stores motion. In this case, I dispute the facts set forth in Target Stores motion and affidavit. I swear to the truth of these facts.
3. At the time of my appointment as store manager for Target Stores, I was the only black male manager in district 310 representing Broward and Palm Beach Counties. I was recruited from Marshalls where I was an executive responsible for divisions within stores.
4. My first position at Target was one of six executives running a store, essentially an assistant manager. Each executive rotates positions in order to gain experience running every aspect of the store.



5. In 1997, I was promoted to store manager (Team Leader) for purposes of closing a store that was being moved to a new location. Shortly thereafter, at the end of 1997, I was made store manager of the Deerfield Beach location. Store managers earn between $60,000 (sixty thousand) to approximately $200,000 (two hundred thousand) depending on performance goals set by the company.

6. The following individuals but not limited to were directly involved in the material facts surrounding this litigation: Terry Gillespie head of personnel for the region, Mark Hastings district manager responsible for all aspects of the district other than security, Douglas Barth district director of security, Don Feinkhauser head of security for the Deerfield Beach store, Shannon Tetrault hired as an executive trainee directly from a MBA program.

7. With the exception of Mr. Gillespie and Ms. Tetrault, each of the abovementioned parties has either left the company or been transferred out of state. Mr. Barth was asked to resign but according to his deposition "does not remember why." (See attached deposition in opposition to motion for summary judgment). Mr. Feinkhauser was transferred to Ohio. Mr. Hastings was transferred to Portland Oregon since the origination of the suit. In addition, Mr. Hastings was the key decision maker in Mr. Harris' termination as my direct superior; however, his deposition has never been allowed to be taken. Hastings was given proper notice but was unavailable for a deposition in Portland before the discovery cutoff. Sheila Cesarano and Rene Gonzalez-Llorens, counsel for the defendant, provided dates they knew that plaintiff's counsel was unable to meet because plaintiff's counsel was at federal mediation at the Department of Justice with two federal judges.

8. According to Feinkhauser's deposition (See Attached and filed in opposition to motion for summary judgment), he would have investigated the alleged acts leading to Mr. Harris termination differently. In addition, this was the only time in his career that he engaged in this type of investigation without involving the police. Feinkhauser was previously employed as a captain of detectives in a small town in Ohio for ten years.

9. The alleged "incident that led to plaintiff's termination took place at Shooters restaurant in Ft. Lauderdale. It has been alleged that plaintiff misreported the amount of the bill in order to steal company funds that were provided for the express purpose of a party for a departing employee Evan Feldman. Steve Harris, Feinkhauser, and Tetrault attended this party.

10. The money to be used for this party was approved by Hastings who directed plaintiff to obtain $500 to cover the cost of the party in advance of the party. These funds were obtained from the cashier.

11. When totaling the bill to determine the change owed Target, plaintiff inadvertently wrote that amount on the check. The waiter took the check before plaintiff could finish his calculation. Feinkhauser was witness to the return of change and the check at the restaurant and knew the amount written on the receipt was incorrect. He specifically asked Harris why Harris was charging the party to his Target credit card.

12. Plaintiff immediately returned the change to his store, while Feinkhauser was present and approved the transaction. Immediately thereafter Feinkhauser called Hastings and Barth claiming that Harris was a security risk. During this conversation, Feinkhauser was told by Hastings and then Gillespie that Tetrault knew about other irregularities regarding plaintiff although in her deposition she does not recall reporting any irregularities. (See attached deposition in opposition to motion for summary judgment). Feinkhauser asserts in his deposition that he did not know about any irregularities until he was told by Barth, Gillespie, and Hastings. Mr. Gillespie claims he knew nothing until he was told by Feinkhauser.

13. It is alleged that plaintiff marked-down items in the store so that he could purchase them at a lower price. Feinkhauser stated in his deposition that no investigation occurred to determine if Harris did anything improper. Moreover, there was no attempt to contact witnesses. Barth claimed that these irregularities were unimportant after being advised that other employees had purchased marked-down items in advance of plaintiff. One of the benefits of an employee at Target is discounted items with first notice. Moreover, the only employees that

are able to change the price of items are executives within the department of the item being discounted or the executive in charge of distribution of inventory.

14. On several occasions plaintiff attempted to get Tetrault to do her job in an appropriate manner but was ordered not to by Hastings.

15. Plaintiff is married to a white woman who works for Target her name is Janice Harris. Plaintiff was single when he was hired by Target.

16. Shortly after plaintiff was married, discriminatory comments occurred with great frequency from the aforementioned and other Target executives.

17. Plaintiff was asked on at least five occasions "How does a "brother" afford an expensive car without doing illegal acts," individually or by the following group of individuals: Gillespie, Feinkhauser, Hastings, Barth, Joe Toscano (former manager at Deerfield Beach Target store), Jason (executive in charge of sporting goods), and Robert Van Savage. The term brother, I consider is a condescending term that is not appropriate to be used. This term is typically used only among blacks.

18. At one point plaintiff had a Mercedes automobile, while other executives had similar cars with no question of the source of their wealth.

19. Other comments include "it must be nice to have a car like this, how does a black guy like you do this."

20. In the employee rest area of the Deerfield Beach store was a mural depicting employees including a caricature of a black-faced person that was painted over subsequent to plaintiff's termination.

21. At a Christmas Party hosted by Robert Van Savage another executive, Janice Harris was asked whether black people like the type of food served at the party.

22. Janice Harris was asked on several occasions could she be married to a black man.

23. Annette Steinberg and Betty Gadson, employees of Target, were directed by management and investigative personnel to write things about plaintiff that were not accurate without plaintiff's knowledge of the investigation. Both individuals later asserted this claim.

24. In support of Count III of the Complaint, I have been unable to obtain employment due to Target's accusations essentially labeling me as a thief.

Affiant further sayeth nought

*Steve Harris*, Affiant

I hereby certify that, on this date, before me, an officer duly authorized in the State and County aforesaid to administer oaths and take acknowledgments, personally appeared STEVE HARRIS, who acknowledges before me that he has read the within Affidavit, and that the facts set forth therein are true and correct, in accordance with his personal knowledge.

Sworn to and subscribed before me, this 20th day of March, 2001.

Notary Public, State of Florida

RICHARD J. BURTON & ASSOCIATES, P.A.
18305 Biscayne Blvd., Suite 300
Miami, FL 33106
(305)705-0888  Fax (305)935-9542

By: _____
Richard J. Burton FBN 179337

**Certificate of Service**

I HEREBY CERTIFY that a true copy of the foregoing Notice was mailed to Sheila Caesarano, Esq., SHUTTS & BOWEN LLP, 1500 Miami Center, 201 South Biscayne Blvd., Miami, FL 33131 on March 20, 2001.

          RICHARD J. BURTON & ASSOC., P.A.
          18305 Biscayne Blvd., Suite 300
          Miami, FL 33160
          Ph: (305) 705-0888   Fax: 935-9542

BY _____
    Richard J. Burton, FBN 179337