# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6107-CIV-FERGUSON/SNOW

STEVE HARRIS,

    Plaintiff,

v.

DAYTON HUDSON CORPORATION
d/b/a TARGET STORES,

    Defendant.

_____/

**NIGHT BOX
FILED**

MAR 2 8 2001

CLARENCE MADDOX
CLERK, USDC / SDFL / FTL

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, **TARGET CORPORATION** ("Target"), replies to Plaintiff **STEVE HARRIS'**

("Plaintiff") Response to Defendant's Motion for Summary Judgment ("Plaintiff's Response").

### SUMMARY OF ARGUMENT

Plaintiff's Response fails to address a single argument made in Target's Summary Judgment Motion. Instead, Plaintiff submitted a three-page response that simply regurgitates decisional holdings without applying the decisions to the facts of this case.

For Plaintiff to defeat Target's Summary Judgment Motion as to Counts I and II (Title VII and § 1981), Plaintiff must meet his burden of proof on the following:

1. Plaintiff must provide evidence establishing a *prima facie* case of discrimination.
2. Plaintiff must provide evidence demonstrating that each of Target's legitimate nondiscriminatory reasons is pretextual.
3. Plaintiff must show a discriminatory animus by the decisionmakers.

In this case, Plaintiff has failed to meet his burden of proof by not providing an iota of evidence.

Similarly, for Plaintiff to establish a defamation claim (Count III), he must demonstrate that Target published defamatory statements to third parties and that the statements are not privileged under § 768.095, Fla. Stat. Again, Plaintiff has failed to meet his burden of proof.

For the reasons set forth below, the Court should grant summary judgment because Plaintiff has failed to establish a case of race discrimination or defamation.

## ARGUMENT

### I. PLAINTIFF HAS NOT ESTABLISHED A *PRIMA FACIE* CASE OF RACE DISCRIMINATION UNDER TITLE VII OR § 1981.

#### A. Plaintiff Fails To Present Evidence Showing That White, Similarly Situated Managers Were Treated More Favorably At Target.

Plaintiff's Response does not identify a single similarly situated, white Target store manager who committed the same violations as Plaintiff and was treated more favorably than Plaintiff. Plaintiff has not named a similarly situated, white Target store manager who provided a falsified restaurant receipt to Target and was not terminated for being a security risk.

Similarly, Plaintiff has not identified a single similarly situated, white Target store manager who was not terminated for committing the following improprieties when discovered: improperly using the company-issued American Express charge card for personal purchases in violation of Target policies; failing to pay the monthly balance on the company-issued American Express charge card in violation of Target policy; being in arrears on his personal Target credit card to the point that his Target account was closed; delaying over a year to repay the outstanding balance on his personal Target credit card; borrowing money from employees; and using employees to do his personal chores.

Plaintiff's deliberate attempt to ignore this argument is obvious: Plaintiff lacks evidence showing that a similarly situated, white store manager (handling a multi-million dollar business) would not be terminated for committing the above improprieties and policy violations. To survive summary judgment, Plaintiff *must* identify a similarly situated, white employee who received more favorable treatment. Walker v. Mortham, 158 F.3d 1177, 1193 (11th Cir. 1998); Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997); St. Hilaire v. The Pep Boys-- Manny, Moe & Jack, 73 F. Supp. 2d 1350, 1361 (S.D. Fla. 1999) (granting summary judgment because plaintiff did not show that there were similarly situated employees who were treated differently). Because Plaintiff did not satisfy the burden of showing that similarly situated, white employees were treated more favorably, Plaintiff's case cannot succeed. Sistrunk v. Neumann, 13 Fla. L. Weekly Fed. D337, D338 (S.D. Fla. March 31, 2000) (granting employer's motion for summary judgment on disparate treatment claim because plaintiff could not identify any similarly situated non-Black employee); McKenzie Corp. v. EAP Management Corp., 40 F. Supp. 2d 1369, 1375 (S.D. Fla. 1999) (finding that the plaintiff could not show that similarly situated non-minority employees were treated more favorably). Accordingly, the Court should grant summary judgment on Plaintiff's race claims.

### B. Plaintiff Fails To Demonstrate That He Was Qualified For The Position.

Plaintiff's Response does not identify any evidence demonstrating that Plaintiff was qualified to remain as the Store Manager once he became a security risk. Target discovered that Plaintiff was a security risk when it investigated the Shooter's Receipt discrepancy and uncovered that Plaintiff had committed numerous improprieties which are listed in pages 6 to 7 of Target's Summary Judgment Motion. Although Target delineated numerous examples of Plaintiff's violations and improprieties, Plaintiff's Response ignores and fails to address these issues, apparently in the hope that the Court will also disregard the evidence.

A Store Manager who, in violation of company policy, (i) presents a false and misleading receipt to Target, (ii) retains money based on a false and misleading receipt, (iii) cannot determine how much company money he returned to the Store when confronted with the receipt discrepancy, (iv) improperly uses his corporate charge card for personal purposes, (v) goes into arrears on amounts owed on his corporate charge card in violation of company policy, (vi) forces subordinates to lend him money for his personal use and assist him with personal errands during work time, (vii) had his Target credit card account closed for failure to pay amounts owed, and (viii) delays over a year to repay his closed Target credit card account clearly is a security risk that cannot be entrusted to oversee and supervise a multi-million dollar store. To be qualified for a job, the employee must show that he was performing his job "at a level which met his employer's legitimate expectations." Vickers v. Federal Express Corp., Case No. 98-2112-Hoeveler, 2000 WL 1725356, *5 (S.D. Fla. Oct. 26, 2000). Plaintiff has clearly failed to meet this threshold.

### II. PLAINTIFF HAS NOT PRESENTED ANY EVIDENCE OF PRETEXT.

Plaintiff's Response attaches Plaintiff's affidavit as"evidence" to establish that Target's legitimate nondiscriminatory reasons are pretextual. However, Plaintiff's affidavit does not demonstrate pretext, but rather that Plaintiff's "evidence" is simply his uncorroborated speculation, inadmissible hearsay, and new "facts" which were never disclosed during Plaintiff's deposition.

### A. The Shooter's Receipt.

For the first time, Plaintiff now apparently blames the Shooter's waiter for the incorrect calculations Plaintiff *handwrote* on the Shooter's Receipt. Plaintiff states, "When totaling the bill to determine the change owed Target, Plaintiff inadvertently wrote that amount on the check. The waiter took the check before Plaintiff could finish his calculations." (Plaintiff. Aff., ¶ 11.)

*First,* Plaintiff's allegation contradicts his deposition testimony where he testified that he

3

could not remember "if I did [the calculation] before the waiter came back to the table." (Plaintiff. Dep. at 80). According to Plaintiff's sworn testimony, Plaintiff added $160.00 to the dinner's cost to equal $295.87 on the Shooter's Receipt. Id. at 78-80. Plaintiff testified that these figures are in his own handwriting. Id. at 78. When asked why he added $160 to the Shooter's Receipt, Plaintiff simply stated: "I was trying to figure out what amount of money should go back to the store so I was calculating.... Yeah. Yes, sorry." Id. at 78-80. Clearly, Plaintiff's deposition testimony shows that Plaintiff lacked an explanation for why the Shooter's Receipt erroneously reflected a total of $295.87, and he never accused the waiter of being responsible for Plaintiff's inaccuracies.

***Second,*** Plaintiff's new explanation also makes no sense whatsoever. If the waiter allegedly took the original of the Shooter's Receipt before Plaintiff could "finish his calculation," Plaintiff obviously retained the carbon copy of the Shooter's Receipt allowing him to finalize his calculations. In fact, Plaintiff testified that he presented the Shooter's Receipt to Target for payment the very next day. (Plaintiff Dep. at 77-78.) Thus, Plaintiff had sufficient time to review and complete his calculations to determine what Target owed for the meal at Shooter's. Plaintiff's request for payment to Target would not be affected by the waiter's actions the day before. Moreover, even if the waiter erred, Plaintiff, as Store Manager, would be highly negligent not to notice and correct the error.

In sum, Plaintiff admits that he handwrote the incorrect amount on the receipt. Plaintiff's attempt to blame others for his deliberate actions is disingenuous. In summary, Plaintiff blames the waiter; his subordinate Caryn Knapp (the hourly employee who handled the reimbursement) because she failed to determine that the amount on the Shooter's Receipt handwritten by her boss was incorrect; and his subordinate Fankhauser (the loss prevention employee) because he failed to stop his boss from submitting a falsified receipt.

## B. Alleged "Inconsistencies" In Deposition Testimonies.

Plaintiff claims that, "Fankhauser was told by Hastings and then Gillespie that Tetrault knew about other irregularities regarding Plaintiff although in her deposition she does not recall any irregularities." (Plaintiff. Aff., ¶ 12.) Plaintiff is wrong for three reasons.

First, Plaintiff's allegation is inadmissible because it is an unsubstantiated hearsay statement since Plaintiff was not a party to any of these alleged conversations and lacks personal knowledge. Fed. R. Civ. P. 56(e) (requiring that affidavits be made "on personal knowledge" and "set forth such facts as would be admissible in evidence"); Macuba v. Deboer, 193 F.3d 1316, 1322-23 (11th Cir. 1999) ("The general rule is that inadmissible hearsay cannot be considered on a motion for summary

4

judgment."). Second, Tetrault did testify that she spoke to Fankhauser about certain irregularities involving Plaintiff's Denny's receipt and that she gave a statement during the risk manager's investigation of Plaintiff. (Tetrault Dep. at 59-60, 73-80.) Third, Plaintiff does not provide any record cite to support his unsubstantiated and incorrect allegation.

Plaintiff also claims that, "Fankhauser asserts in his deposition that he did not know about any irregularities until he was told by Barth, Gillespie, and Hastings. Mr. Gillespie claims he knew nothing until he was told by Fankhauser." (Plaintiff. Aff., ¶ 12.) First, Fankhauser testified that Barth, his supervisor, and not Gillespie, told him about certain irregularities (*e.g.,* Tetrault knew about a Denny's voucher impropriety) and asked him to take statements. (Fankhauser Dep. at 97-98.) Second, Gillespie's deposition does not support Plaintiff' allegation. Note that Plaintiff fails to provide a record cite to Gillespie's deposition for his unsubstantiated conclusion.

### C.   Newly Alleged Stray Remarks.

For the very first time, Plaintiff now alleges several purported stray remarks which were never disclosed during Plaintiff's deposition. (Plaintiff Aff., ¶¶ 17-22.) Plaintiff claims that (1) on five occasions, he was asked, "How does a 'brother' afford an expensive car without doing illegal acts," respectively by Gillespie, Fankhauser, Hastings, Barth, Joe Toscano, and Jason; (2) an undisclosed person stated, "it must be nice to have a car like this, how does a black guy like you do this"; (3) a manager at another store asked Plaintiff's wife if "black people like the type of food served at the party"; and (4) undisclosed persons ask Plaintiff's wife if "she could be married to a black man." (Plaintiff Aff., ¶¶ 17-22.)

***First,*** Plaintiff's own deposition contradicts these new allegations. During his deposition, Plaintiff testified to a limited number of comments which are discussed on pages 13 to 16 of Target's Summary Judgment Motion. (See also Plaintiff Dep. at 170-180). During his deposition and after explaining certain comments, Plaintiff was asked:

Q. Any other statements that you can think of?

A. No. Not Target managers, no.

Q. Or that you overheard Target managers say to someone else.

A. No.

Id. at 180. The newly alleged comments were never mentioned.

***Second,*** the five purported comments using the term "brother" are at most stray remarks which do not involve the decision to terminate Plaintiff. These comments are not direct evidence of discrimination because they were not made in the context of the employment decision. See

5

Vickers v. Federal Express Corp., Case No. 98-2112-Hoeveler, 2000 WL 1725356, *5 (S.D. Fla. Oct. 26, 2000) (citing Wheatley v. Baptist Hosp. Of Miami, Inc., 16 F. Supp. 2d 1356, 1359-60 (S.D. Fla. 1999), aff'd, 172 F.3d 882 (11th Cir. 1999)). The use of the term "brother" is an isolated incident and, as such, cannot establish discrimination. Rea v. Martin Marietta Corp., 29 F.3d 1450, 1457 (10th Cir. 1994) ("Isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions.")

***Third,*** the purported comment by an undisclosed person to Plaintiff regarding his car is a comment made by non-decisionmaker and is not indicative of discriminatory animus in any event. Comments by non-decisionmakers do not raise an inference of discrimination and are irrelevant in a discrimination claim. Mitchell v. USBI Co., 186 F.3d 1352, 1355 (11th Cir. 1999); Standard v. A.B.E.L. Services, Inc., 161 F.3d 1318, 1329-30 (11th Cir. 1998). Comments by non-decisionmakers cannot constitute direct or circumstantial evidence of discrimination as a matter of law. Holifield, 115 F.3d 1564; Trotter v. Board of Trustees of University of Alabama, 91 F.3d 1449, 1454, 1456 (11th Cir. 1996) (discriminatory comments made by a person not involved in the challenged decision are not probative of discrimination). In addition, purported comments made by non-decisionmakers and undisclosed individuals to Plaintiff's wife cannot constitute direct or circumstantial evidence of discrimination. Id.

### D.    Alleged Statements By Steinberg And Gadson.

Plaintiff claims that "Annette Steinberg and Betty Gadson ... were directed by management and investigative personnel to write things about Plaintiff that were not accurate without Plaintiff's knowledge of the investigation." (Plaintiff Aff., ¶ 23.) Plaintiff does not support this allegation with any evidence, but simply provides his own hearsay testimony. As such, Plaintiff's hearsay testimony is inadmissible. Fed. R. Civ. P. 56(e); Macuba, 193 F.3d at 1322-23 (11th Cir. 1999).

### E.    Plaintiff Has Failed To Present Any Evidence Showing Pretext.

To demonstrate that Target's legitimate nondiscriminatory reasons for his termination are pretextual, Plaintiff must present sufficient evidence to establish that ***each of Target's proffered reasons is pretextual.*** Combs v. Plantation Patterns, 106 F.3d 1519, 1529 (11th Cir. 1998). As Plaintiff's Response demonstrates, Plaintiff has failed to meet his burden of proof.

Target terminated Plaintiff because he was a security risk and violated numerous policies. Pursuant to Target's policies, a manager who is a security risk may be immediately terminated since Target considers this to be "gross misconduct." (Ex. A, Gillespie Aff. ¶ 12; Ex A(9), Target's Policy

6

on Gross Misconduct; Ex. A(10), Target Executive Team Member Handbook.) Plaintiff's conduct through his untruths and inability to follow company procedures, particularly when dealing with company funds, demonstrates that he was a security risk and his job performance was unsatisfactory. Moreover, Plaintiff's request to at least one employee to borrow money (still unpaid) and to assist him with personal errands during work hours is unprofessional and hurts morale. Plaintiff has not rebutted these legitimate, nondiscriminatory reasons for Plaintiff's termination.

Moreover, Plaintiff was terminated because he had violated other Target policies. First, an employee who falsifies documents relied upon by Target may be immediately terminated. (Ex. A(10), Target Executive Team Member Handbook, at 48.) In addition, an employee whose Target credit card account is not in good standing can be terminated. Id. at 47. In this case, Plaintiff violated Target's policies when his Target credit card account was closed, delayed payment on the Target credit card account for over one year, and presented the false/misleading Shooter's Receipt to Target. Similarly, Plaintiff has not rebutted any of these legitimate, nondiscriminatory reasons for Plaintiff's termination.

Plaintiff cannot satisfy his burden merely by attacking the correctness of the employment decision. Elrod v. Sears Roebuck & Co., 939 F.2d 1466 (11th Cir. 1991). In Elrod, the plaintiff was terminated after allegations of sexual harassment were made against him. The jury returned a verdict under the ADEA for the plaintiff. On appeal, the Eleventh Circuit reversed, holding that the issue of whether the charges were correct was not dispositive. What was at issue was whether the employer had biased motivation, rather than one based on a business decision, correct or otherwise. Thus, proof of an incorrect or debatable decision is not sufficient evidence of pretext.

Furthermore, Plaintiff is required to prove discriminatory animus and intentional discrimination by Target. Joseph v. Publix Super Markets, Inc., 983 F. Supp. 1431, 1444 (S.D. Fla. 1997). Plaintiff has presented no evidence that (1) Target's alleged discriminatory animus towards him was based on his race and (2) a causal link between his race and the termination.

To survive a summary judgment motion, Plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could find them unworthy of credence. Failure to produce sufficient evidence of pretext dictates the entry of judgment against the employee. Simmons v Camden County Board of Education, 757 F.2d 1187 (11th Cir. 1985). Accordingly, the Court should grant summary judgment since Target has provided legitimate, nondiscriminatory reasons for its actions and Plaintiff has failed to demonstrate that the reasons are pretextual.

### III. PLAINTIFF HAS NOT ESTABLISHED A LIBEL OR SLANDER CLAIM.

Plaintiff's Response fails to provide any evidence that Target made a statement about him to a prospective employer. A defamation claim must include "a false and defamatory statement concerning another" that is published to a third party. Linafelt v. Beverly Enterprises-Florida, Inc., 745 So. 2d 386, 388-89 (Fla. 1st DCA 1999). Plaintiff has not identified any statement, who made the statement, when the statement was made, and to whom the statement was provided.

Moreover, any statement that Target made to a prospective employer is presumed to be in good faith under § 768.095, Fla. Stat. Assuming, *arguendo*, that Plaintiff had identified a single statement, as well as the statement's maker and recipient, Plaintiff has not provided any evidence to defeat the privilege set forth in § 768.095, Fla. Stat. For the reasons stated in pages 17 to 18 of Target's Summary Judgment Motion, the Court should grant summary judgment as to Count III.

### IV. PLAINTIFF'S CLAIM OF SEX DISCRIMINATION SHOULD BE STRICKEN.

Plaintiff's Response states that the protected interests in this case involve race (African-American) and sex (male). This is the first time that Plaintiff raises a sex discrimination claim in this lawsuit, some 14 months after the Complaint was filed. Moreover, no requisite charge of discrimination was filed and, thus, the claim is procedurally defective.

The Court should not consider Plaintiff's eleventh-hour sex discrimination allegation because such a claim was not identified in Plaintiff's charge of discrimination. Plaintiff cannot bring a claim that was not included in his/her charge of discrimination. Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974). Plaintiff is limited to the allegations raised in or those that "can be reasonably expected to grow out of" the charge of discrimination. See Baker v. Buckeye Cellulose Corp., 856 F.2d 167, 169 (11th Cir. 1988); Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir. 1970). Moreover, Plaintiff has provided no evidence of sex discrimination.

### V. PLAINTIFF'S RESPONSE MISSTATES EVIDENCE.

In his affidavit, Plaintiff makes numerous allegations which are incorrect, misleading, and contradict the evidence. These misstatements include the following.

***First,*** Plaintiff presents his hearsay testimony that, "Mr. Barth was asked to resign," but according to his deposition "does not remember why." (Plaintiff Aff., ¶ 7.) Plaintiff's Response fails to identify a record cite where Barth purportedly made such statement. Plaintiff misleads the Court. Barth never testified that he was asked to resign, but rather testified that he voluntarily resigned and was not forced to resign. Plaintiff's hearsay statements should be disregarded.

8

***Second,*** Plaintiff alleges that, "In the employee rest area ... there was a mural depicting employees including a caricature of a black-faced person that was painted over subsequent to Plaintiff's termination." (Plaintiff Aff., ¶ 20.) Plaintiff misleads the Court. While he was Store Manager, Plaintiff commissioned his friend – who is a painter and was paid $1,000.00 – to paint a mural in the employee rest area that would include a picture of all the Store's Executive Team Leaders (i.e., the 5 or so managers in the Store). (Ex. A, Gillespie Supp. Aff., ¶ 7; Ex. A(1), Agreement.) Consequently, the painter painted the mural to include Plaintiff, an African-American, along with the other Store managers. (Ex. A, Gillespie Supp. Aff., ¶ 7; Ex. A(2), Picture of Mural.) Plaintiff's picture was ***not*** a "caricature," as misleadingly stated by Plaintiff, but rather a picture of Plaintiff along with the pictures of the other Store managers. Id. After Plaintiff was terminated, Target decided to paint over the entire mural. (Rosenberg Dep. at 19-20; Lapre Dep. at 22.) Thus, the pictures of ***all*** the Store Executive Team Leaders were painted over. Id. Plaintiff's insinuation that the African-American's picture (i.e., Plaintiff) was the only picture painted over is wrong and disingenuous.

***Third,*** Plaintiff insinuates that he was the only African-American Target store manager in Florida. (Plaintiff Aff., ¶ 3.) Plaintiff is wrong. During the relevant time period, there were at least four other African-American Store Managers in Florida. (Ex. A, Gillespie Supp. Aff., ¶¶ 3-6.)

***Fourth,*** Plaintiff alleges that the deposition of Mark Hastings, Target's District Manager and Plaintiff's supervisor, has "never been allowed to be taken," and that, "Sheila Cesarano and Rene Gonzalez-LLorens, counsel for defendant, provided dates they knew that plaintiff's counsel was unable to meet because plaintiff's counsel was at a federal mediation at the Department of Justice with two federal judges." (Plaintiff Aff., ¶ 7.)

Plaintiff again misleads the Court. Plaintiff knew that Hastings -- his direct supervisor and the individual who told Plaintiff that he was terminated -- was a key witness. During Plaintiff's deposition on June 5, 2000, Plaintiff testified about Hastings, the meetings with Hastings that led to his termination, and mentioned Hastings over 30 times during the deposition. Target disclosed that Hastings was a relevant witness in this case on June 16, 2000, in Target's Response to Plaintiff's First Set of Interrogatories, and provided Hastings' Oregon address. On December 11, 2000, Target again disclosed Hastings as a relevant witness in Target's Witness List and again provided Hastings' Oregon address. Before discovery ended on March 15, 2001, Plaintiff had ***14 months*** within which to depose Hastings in a case where Plaintiff has extended discovery on two separate occasions. Plaintiff's self-serving blame of undersigned counsel for his own counsel's failure to take Hastings'

9

deposition is frivolous. For Plaintiff to accuse Target of dilatory tactics, when his counsel failed to timely depose Hastings during 14 months of discovery, is simply a front for his own failures.

### CONCLUSION

Defendant, TARGET CORPORATION, respectfully requests that the Court enter Summary Judgment on all Counts in its favor and against Plaintiff.

Respectfully submitted,

SHUTTS & BOWEN LLP
Attorneys for Defendant
201 South Biscayne Boulevard
1500 Miami Center
Miami, Florida 33131
(305) 358-6300
(305) 347-7386 (facsimile)

By: _____
Sheila M. Cesarano
Florida Bar Number 708364
Rene Gonzalez-LLorens
Florida Bar Number 0053790

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was mailed on this 28 day of March 2001, to Richard J. Burton, Esq., Richard J. Burton & Associates, P.A., 18305 Biscayne Boulevard, Suite 300, Miami, Florida 33160.

_____
OF COUNSEL

MIADOCS 407291.1 RGL

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6107-CIV-FERGUSON/SNOW

STEVE HARRIS,

    Plaintiff,

v.

DAYTON HUDSON CORPORATION
d/b/a TARGET STORES,

    Defendant.

_____/

### SUPPLEMENTAL AFFIDAVIT OF TERRY GILLESPIE IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

STATE OF FLORIDA    )
                            ) ss:
COUNTY OF ORANGE  )

    I, **TERRY GILLESPIE**, state:

    1.    I am over eighteen years of age and make this Affidavit based upon my own personal knowledge and a review of the records kept and maintained by Defendant, TARGET CORPORATION ("Target"). I have full authority to make this Affidavit.

    2.    I am responsible for Spoke 393, the Target District which includes Florida and was the District where Plaintiff, STEVE HARRIS ("Plaintiff"), was employed.

    3.    At all relevant times to this lawsuit, Don McGiness was an African-American Target Store Manager (Store Team Leader) in Spoke 393 (Tampa and South Florida).

    4.    At all relevant times to this lawsuit, Kathy Chippey was an African-American Target Store Manager (Store Team Leader) in Spoke 393 (West Palm Beach and North Miami).

    5.    At all relevant times to this lawsuit, Wilbert Merriweather was an African-American Target Store Manager (Store Team Leader) in Spoke 393 (Hollywood and Mobile, Alabama)

    6.    At all relevant times to this lawsuit, Sharon Robinson was an African-American Target Store Manager (Store Team Leader) in Spoke 393 (Tampa).

    7.    While he was Store Manager, Plaintiff commissioned his friend - who is a painter and was paid $1,000.00 - to paint a mural in the employee rest area that would include a picture of all the Executive Team Leaders (i.e., the 5 or so managers in the Store). Attached as Exhibit "1" is

a true and correct copy of the agreement between Plaintiff and the painter. Consequently, the painter painted the mural to include Plaintiff, an African-American, along with the other Store managers. Plaintiff's picture was *not* a "caricature," as misleadingly stated by Plaintiff, but rather a picture of Plaintiff along with pictures of the other Store managers. Attached as Exhibit "2" is a true and correct copy of the mural.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 28th day of March 2001

TERRY GILLESPIE

M:\DOCS\408033.1 MBD

2

*paintings by Jeanne*

Residential & Commercial Art
murals, seasonal window painting,
lettering & textured wall art

954-421-6417

603 2610

$700.00

Att: Steve Harris
Target
Store Manager — Dayfield Beach

1/27/99

As per our conversation in regard to the painting of a mural in your Target Conference Room.

We have agreed on $1,000.00. I am anticipating this will be completed within a week, however it may or may not run over a few days.

I will need an advance of $300.00 as soon as possible, to purchase materials.

I can be reached at 421-6417. Please let me know if this is agreeable with you.

Thank You
Jeanne Moscini

Target/Harris 247

