**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
FT. LAUDERDALE DIVISION

STEVE HARRIS,
    Plaintiff,        Case No. 00-6107-CIV-FERGURSON
                          MAGISTATE JUDGE SNOW

vs.

TARGET CORPORATION f/k/a
DAYTON HUDSON CORPORATION
d/b/a TARGET STORES

_____/

## RESPONSE TO DEFENDANT'S MOTION TO BIFURCATE TRIAL AND INCORPORATED MEMORANDUM OF LAW

**COMES NOW**, the Plaintiff, Steve Harris and sets forth his RESPONSE TO DEFENDANT'S MOTION TO BIFURCATE TRIAL AND INCOPRORATED MEMORANDUM OF LAW, wherein the Defendant moves the Court to bifurcate at trial the issue of (i) the issue of punitive damages entitlement from punitive award (ii) the issue of liability pursuant to Fed. R. Civ. P. 42(b). Plaintiff respectfully requests that said Motion be denied. The grounds for this motion are set forth in the following memorandum of law:

### OVERVIEW

This lawsuit asserts federal civil rights based on Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981 and state claims of libel and slander related to Defendant's discrimination of Plaintiff's race. Plaintiff has sought compensatory and punitive damages on all counts. Defendant's motion attempts to request that the court separate the issues of liability from the issue of punitive damages in an attempt to create a more orderly proceeding. Plaintiff respectfully requests



that said motion be denied and that the trial be continued as a whole rather than separate trials.

### STATEMENT OF FACTS

This lawsuits arises out the 1999 termination of Plaintiff from Defendant Corporation. Plaintiff was dismissed after an alleged discrepancy arose over the amount of tip left at a company sponsored dinner party. Defendant thereafter initiated an investigation of Plaintiff's personal accounts and as a result terminated him. Plaintiff was the only manager of African-American decent that was terminated. However, many other white store managers in similar circumstances were not terminated for like shortages. Another *non-minority* manager subsequently replaced plaintiff's position.

### I. As To Defendant's Request For A Second Trial For Punitive Damages.

In Defendant's Motion to Bifurcate, they state that bifurcating a trial is a mandate from the Florida Supreme Court (Defendant's Motion pg. 2) and support it by W.R. Grace & Co. v. Waters, 638 So.2d 502 (Fla. 1994). Dessanti v. Contreras, 695 So. 2d 845, (4th DCA 1997) explains the Florida Supreme Court reasoning in adopting the decision in W. R. Grace states "*W.R. Grace came to the supreme court on a certified question concerning the propriety of imposing successive punitive damage awards against a single defendant for the same course of conduct*", and a Decision by the Third District Court Of Appeal reversing the Trial Court's Order striking punitive Damages. The bifurcation of

2

that said motion be denied and that the trial be continued as a whole rather than separate trials.

### STATEMENT OF FACTS

This lawsuits arises out the 1999 termination of Plaintiff from Defendant Corporation. Plaintiff was dismissed after an alleged discrepancy arose over the amount of tip left at a company sponsored dinner party. Defendant thereafter initiated an investigation of Plaintiff's personal accounts and as a result terminated him. Plaintiff was the only manager of African-American decent that was terminated. However, many other white store managers in similar circumstances were not terminated for like shortages. Another *non-minority* manager subsequently replaced plaintiff's position.

### I.    As To Defendant's Request For A Second Trial For Punitive Damages.

In Defendant's Motion to Bifurcate, they state that bifurcating a trial is a mandate from the Florida Supreme Court (Defendant's Motion pg. 2) and support it by W.R. Grace & Co. v. Waters, 638 So.2d 502 (Fla. 1994). Dessanti v. Contreras, 695 So. 2d 845, (4th DCA 1997) explains the Florida Supreme Court reasoning in adopting the decision in W. R. Grace states "*W.R. Grace* came to the supreme court on a certified question concerning the propriety of imposing successive punitive damage awards against a single defendant for the same course of conduct", and a Decision by the Third District Court Of Appeal reversing the Trial Court's Order striking punitive Damages. The bifurcation of

2

and was solely in relation to "new" changes enacted by an amended Florida Statute. {see United States Mineral Products Company v Waters, 610 So. 2d 20 (3 DCA, FL, 1992)}.

Since the Florida *procedure* of bifurcating trials, is a procedural issue, it is axiomatic that as to issues *of procedure* the Federal Rules of Civil Procedure, and not State law apply pursuant to the **ERIE** doctrine.

In fact the W.R. Grace Case, itself implemented the procedure in response to a change in the Florida Law pursuant to (then new) F.S. §§768.71-768.74 (1993) as is clearly noted at pg. 506 of the opinion.

The Grace opinion in fact makes the best argument **AGAINST** granting the Motion to Bifurcate the trial. First Grace is a case involving multiple claims for injuries caused by a defective product, not a Civil Rights Claim, under 42 U.S.C. § 1981. Second, as cited in Grace, most of the decisions relied upon were Federal Court decisions where there was no bifurcation of the liability and the damages, either actual or punitive. In Grace the Court wrote, " In the twenty-seven years following the > Roginsky opinion, many courts have addressed the issue of multiple punitive damage awards against a single defendant for the same course of conduct. The courts of other jurisdictions have unanimously refused to limit the imposition of successive punitive damage awards in mass tort or products liability litigation. E.g., > Dunn v. Hovic, 1 F.3d 1371 (3d Cir.), modified in part on other grounds, > 13 F.3d 58 (3d Cir.), cert. denied, > --- U.S. ----, 114 S.Ct. 650, 126 L.Ed.2d 608 (1993);  > Glasscock v. Armstrong Cork Co., 946 F.2d 1085 (5th Cir.1991), cert. denied, > --- U.S. ----, 112 S.Ct. 1778, 118 L.Ed.2d 435 (1992);  > Jackson v. Johns-Manville Sales Corp., 781 F.2d 394 (5th Cir.), cert. denied, > 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986);  > Moran v. Johns-Manville Sales Corp., 691 F.2d 811

3

(6th Cir.1982). [at page 504]. In fact <u>Grace</u> goes on to say, "Grace also attacks the imposition of punitive damages in this case on constitutional grounds. Grace argues that punitive damage awards, which exceed an amount which is reasonably necessary to punish and deter, violate the concept of "fundamental fairness" inherent in due process."

In > Pacific Mutual Life Insurance Co. v. Haslip, 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), the United States Supreme Court reviewed a punitive damage award in an Alabama insurance fraud case. The award was more than four times the amount of compensatory damages and over two hundred times the plaintiff's out-of-pocket expenses. Id. at 23, > 111 S.Ct. at 1046. The Court recognized that punitive damages are subject to some degree of due process analysis. "[U]nlimited jury discretion--or unlimited judicial discretion for that matter--in the fixing of punitive damages may invite extreme results that jar one's constitutional sensibilities." Id. at 18, > 111 S.Ct. at 1043. However, the Court refused to "draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit every case." Id. Instead, the Court reviewed the procedures employed in Alabama to determine whether they satisfied due process.

In > Haslip, the Court focused on the punitive damage jury instructions and the post-trial procedures for reviewing punitive damage awards. > Id. at 20-21, 111 S.Ct. at 1044-45. The Court found that the jury instructions imposed "a sufficiently definite and meaningful constraint on the discretion of Alabama fact finders in awarding punitive damages," and that the post-verdict review ensured "that punitive damages awards are not grossly out of proportion to the severity of the offense and have some understandable relationship to compensatory damages." > Id. at 22, 111 S.Ct. at 1045. As the award in > Haslip "did not lack objective criteria," the Court rejected the due process challenge. > Id. at 23, 111 S.Ct. at 1046.

4

> To the extent that Grace relies on > Haslip to challenge Florida's procedures for assessing punitive damages, its argument is premature. In the instant case, Waters' punitive damages claim was struck before trial. The issue was never before the jury. There is no way to predict whether a jury would award punitive damages in this case, nor is it possible to determine whether the award would be "grossly out of proportion to the severity of the offense" without actually seeing the size of the award. > Haslip, 499 U.S. at 22, 111 S.Ct. at 1045."

The Federal Cases cited are equally inapplicable. The quoted portion of Larson v Powell, 16 F.R.D. 322, 323 (D.Colo, 1954) is accurately quoted, however Larson is not a civil rights claim where the jury would be asked to assess both compensatory and punitive damages! Similarly, Helminski v Ayerst Labratories, 766 F. 2d 212, (6 Cir, 1985), cert den. 474 U.S. 981 (1985) involved a severely handicapped child, claimed to have been so injured, as a result of the pharmaceutical manufacturer's product. The Court, in **that** case held that the child's presence before the jury could be so dramatic that *liability* should first be determined before the child was displayed to the jury, otherwise the Jury's award could be impermissibly affected by the passions and emotions of the Jury.

No Federal Civil Rights case has been cited to support the *novel* proposition that compensatory damages should first be tried and then a separate jury in a bifurcated re-trial, hear punitive damages.

## II. Defendant's request for a seperate trial for expeditious Adjudication, simplication of the Proceedings, avoidance of jury confusion and risk of unfair predujice.

The Defendant's motion to bifurcate states that separate trials are required for the purpose judicial efficiency, to avoid unfair prejudice, to simplify the

5

proceedings and avoid jury confusion. However, two separate trials in this case would lead to duplication of complex issues, repetition of issues, and thus would be prejudicial to the Plaintiff. As a result, plaintiff would not be able to fairly present all of his issues at trial.

In the instant case liability hinges on many inferences, and thus the purpose of a complete trial is not to illicit sympathy from the jury, but rather give the jury a complete picture of the overall evidence. If the jury only possesses part of the relevant evidence, it could have a serious impact on the jury's determination. Plaintiff would not need to point out Defendant's net worth, as Defendant is a large Corporation that would bring familiarity to most persons. Therefore, said motion to bifurcate should be denied.

WHEREFORE, the Plaintiff respectfully requests that Defendant's Motion to Bifurcate should be denied in accordance with the foregoing.

Respectfully submitted this day of 5th day of April, 2001.

RICHARD J. BURTON & ASSOCIATES, P.A.
Attorney for PLAINTIFF
Florida Bar No. 179337
18305 Biscayne Blvd., Suite 300
Miami, FL 33106
(305)705-0888  Fax (305)935-9542

6

Harris v Target Corporation Case # 00-6107-CIV-FERGUSON

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by US Mail this 5th day of April, 2001 to Sheila M. Cesarano, Esq. Shutts & Bowen LLP., 1500 Miami Center, 201 South Biscayne Blvd., Miami, FL 33131.

_____
RICHARD J. BURTON Esq..

7