### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

STEVE HARRIS,   Case No. 00-6107-CIV-FERGUSON

  Plaintiff,

vs.

DAYTON HUDSON CORPORATION
d/b/a TARGET STORES,

  Defendant.

  JUN 1 8 2001

_____/

### ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The plaintiff, Steve Harris ("Harris"), brings this action alleging that the defendant, Dayton Hudson Corporation d/b/a Target Stores ("Target"), discriminated against him in the workplace based on his race. Also included in the complaint are claims of libel and slander based on communications that Target allegedly had with Harris' potential future employers. The case is before the Court on the Defendant's Motion for Summary Judgment [D.E. 41].

### FACTUAL BACKGROUND

In June of 1994 Harris, an African-American male, interviewed for a position at Target. Terry Gillespie, Target's Regional Human Resource Manager, who is white, was one of the managers who interviewed Harris. Upon completing the interview process, Gillespie offered Harris a managerial position. On June 9, 1994 Harris commenced his employment as an Assistant Store Team Leader-in-Training (Assistant Store Manager in Training) at a Target store located in Boca Raton. After completing the initial training, Harris was promoted to Assistant Store Team Leader (Assistant Store Manager) on August 1,1994.

On December 28, 1997, Target promoted Harris to Store Team Leader (Store Manager) of a Target store located in Greenacres that was scheduled for closing. On April 1, 1998, Target transferred Harris to a Target store in Deerfield Beach as the Store Team Leader (Store Manager). As part of his job responsibilities, Harris oversaw all store funds and budgets. He was required to direct the merchandising, operation, and personnel functions of the store with an identifiable goal of attaining maximum profits, sales and returns on investments. In March of 1999, Harris was the only African-American acting as a General Store Manager in the West Palm Beach District stores. He was dismissed soon thereafter.

Target asserts several reasons for its termination of Harris including an incident where he falsified a sales receipt. In January of 1999, Harris contacted Mark Hastings, Target's District Manager, to authorize a going-away dinner party for Evan Feldman, an Executive Team Leader, who had resigned. The party was approved by Hastings who directed Harris to obtain $500 to cover the cost of the party. These funds were obtained with the approval of Don Fankhauser, the store's security manager.

Feldman's going-away dinner party was held on January 29, 1999, at Shooter's, a Fort Lauderdale restaurant, and was attended by Harris, Shannon Tetrault, Don Fankhauser, and Evan Feldman. The charge for the meal was $135.87. The Shooter's receipt showed an additional $160 charge, which Harris admits was handwritten by him.[1]

Target authorized its security manager, Don Fankhauser, to conduct an investigation. It is undisputed that he later contacted the waiter who recalled that Harris had left approximately a $25

---

[1] Plf. Dep. p. 78-80.

2

tip.[2] Based upon the waiter's statements, the total owed for the meal should have been $160 including a $25 tip. However, the total amount indicated on the receipt which Harris submitted to Target was $295.87. Harris gave the Shooter's receipt and the unspent dinner-party funds to the store's service desk supervisor, Caryn Knapp. Knapp retained $205, the cash difference between the $500 allocated for the dinner party and $295.87, the amount on the receipt. Target's investigation concluded with a finding of a $135 discrepancy between the amount actually spent and the amount claimed by Harris.

In February of 1999, Harris attended a meeting where Mark Hastings, Doug Barth (Target's District Asset Protection Team Leader), and Terry Gillespie were present. Harris requested to meet with Hastings and Barth because he had been made aware of the ongoing investigation regarding the Shooter's receipt discrepancy.[3] Gillespie questioned Harris about the Shooter's incident and asked him to explain the discrepancy between the bill and the amount returned. Harris could not account for the missing funds.[4]

As part of the probe into Harris' activities, charges on Harris' company-issued American-Express credit card were examined. Target's Policy Manual states "credit cards issued by Target to its team members are for business expenses only". It is undisputed, however, that Harris made non-business purchases on his Target American-Express credit card.[5] The American-Express card was also in arrears, in violation of Target's corporate policy requiring that business accounts be kept

---

[2] Plf's Dep., p.114

[3] Plf's Dep., p.70.

[4] Plf's. Dep. p. 114.

[5] Plf's. Dep. p. 127-28.

current. Failure to make payments when due is expressly grounds for termination of the account.[6]

Because of Harris' excessive personal charges, which he failed to pay in a timely manner, his company issued charge account was eventually closed. Target considered the credit card issue as part of Harris' delinquency problems and considered this as yet another reason why he was fired.

Harris alleges that other Target employees violated the same company policies that he did but were not disciplined as harshly. As an example of an inequity he points to the case of Toscano, a white store manager who violated company policy by improperly marking down or scanning SKUs which resulted in improper merchandise prices. It is alleged that Harris committed the same infraction. When confronted by Gillespie about this, Harris states that he told Gillespie that Toscano was doing the same thing in his store. Harris claims that this resulted in a large shortage for Toscano's store but argues that Toscano was not investigated or reprimanded. In contrast, Target cited the same offense of improperly marking down items as a reason for Harris' termination.

As another example of alleged disparate treatment, Harris asserts that Shannon Tetrault, captain of the district for guest service card applications, was involved in an IOU accounting system in violation of company policy. The system was used to account for vouchers that were outstanding. Fankhouser talked to the store's employees about discontinuing the IOU system and Harris told his staff to stop using it. Tetrault broke the policy by re-ringing returns at the service desk so they would not show up on the risk reports. Harris claims he brought this to the attention of Fankhauser and later called Hastings and asked if he should put Tetrault in counseling or initiate some other corrective

---

[6] Plf's Dep., p.120-121.

4

action. Harris says he was told just to talk to her and not give her any type of warning.[7]

Besides these two examples, tendered by Harris as evidence of disparate treatment, he claims that remarks made to him and his spouse indicate that racial discrimination was the motivating factor in his termination. Harris claims that on five occasions he was referred to as a "brother" and asked by Gillespie and other co-workers, "how could a brother afford a Dodge Viper?" Harris states that he considers the term "brother" derogatory. He also alleges that his wife was subject to prejudicial remarks such as inquiries as to what type of food black people liked. He states that he was asked by a co-worker what kind of difficulties he ran into being married to a white woman, especially since she was blond. [8] However during his deposition Harris conceded that he was "not sure" if some of the comments on which he based his claim were "racist".[9]

## STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 246, 248 (1986). Similarly, a fact is "material" if it might affect the outcome of the suit under the governing substantive law. Anderson, 477 U.S. at 247.

---

[7] Plf's Dep., pp. 137-157.

[8] Plaintiff Aff., ¶¶17-22; Plf's Dep., pp.170-180.

[9] Plf's Depo. p. 179.

5

In considering this motion for summary judgment, the Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the defendant should prevail as a matter of law." Id. at 243. The movant bears the initial burden of showing the absence of a genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In deciding whether the movant has met this burden, the Court must view the evidence and all factual inferences in the light most favorable to the non-movant. Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1532 (11th Cir. 1992). "If reasonable minds could differ on the inferences arising from undisputed facts, summary judgment should be denied." Id. at 1534.

Once the initial burden is met, the non-movant must come forward with specific facts showing that there is a genuine issue for trial that precludes summary judgment. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The evidence presented cannot consist of conclusory allegations, legal conclusions or evidence which would be inadmissable at trial. Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Likewise, "a mere scintilla of evidence supporting a position will not suffice; there must be enough of a showing that the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252. Failure to make a showing sufficient to establish the existence of any essential element of a claim is fatal and requires the entry of summary judgment. Celotex Corp., 477 U.S. at 322-323.

## ISSUES PRESENTED

The issues raised are whether the plaintiff has established a prima facie case of racial discrimination resulting in unlawful termination and 2) whether a plaintiff establishes a prima facie case of libel or slander when no factual allegations are made as to how or when the statements were

disseminated or published.

## DISCUSSION

### A *Prima Facie* Case of Disparate Treatment

In order to establish a prima facie case of discrimination under both Title VII and 42 U.S.C. § 1981[10] in a disparate treatment case, a plaintiff must show that: 1) he belongs to a protected class; 2) he was subjected to an adverse job action; 3) his employer treated similarly situated employees outside his classification more favorably; and 4) he was qualified for the job. Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999). Demonstrating a prima facie case requires only that the plaintiff establish facts adequate to permit an inference of discrimination. See Texas Dep't of Community Affairs v. Burdine, 101 S.Ct. 1089, 1093-4 (1981).

There is a material issue of fact as to whether Harris' employer treated similarly situated employees outside his classification more favorably. For that reason summary judgment is precluded.

### A *Prima Facie* Case of Libel or Slander Claim

Harris claims that Target's wrongful termination deprived him of the ability to seek new employment. To substantiate this claim there must indeed be communication between Target and potential future employers of a "false and defamatory statement concerning another." Linafelt v. Beverly Enterprises-Florida, Inc., 745 So.2d 386, 388-89 (Fla 1st DCA 1999). Harris has the burden

---

[10] See Vincent v. Wells Fargo Guard Services, Inc., 3 F. Supp. 2d 1405, 1413 (S.D. Fla. 1998)(indicating a similar analytical framework between Title VII and section 1981); Turnes v. AmSouth Bank, NA, 36 F.3d 1057 (11th Cir. 1994)(stating that the same method for establishing discrimination cases under Title VII may be used for 42 U.S.C. §1981).

7

of showing that some statements made to potential employers were "knowingly false," "deliberately misleading", or "rendered with a malicious purpose." Linafelt, 745 So.2d at 388-89.

Target has a presumption of good faith in regards to statements made to perspective employers pursuant to Florida Statute § 768.095 which states in pertinent part:

> [a]n employer who discloses information about a former or current employee to a prospective employer of . . . upon request of the prospective employer or of the former or current employee is immune from civil liability for such disclosure or its consequences unless it is shown by clear and convincing evidence that the information disclosed by the former or current employer was knowingly false or violated any civil right of the former or current employee protected under chapter 760.

Harris has failed to produce any evidence that Target knowingly disseminated false statements to prospective employers. In fact, the record is conspicuously devoid of names of the alleged prospective employers with whom Target spoke or what was said. For that reason, Harris has failed to present a *prima facie* case of either libel or slander.

Having duly considered the motions, responses, oral arguments and pertinent parts of the record, it is

**ORDERED AND ADJUDGED** that the Defendant's Motion for Summary Judgment [ D.E. 41] is **GRANTED in part, DENIED in part**.

**DONE AND ORDERED** in Chambers at Ft. Lauderdale, Florida, this 18TH day of June, 2001.

WILKIE D. FERGUSON, JR.
UNITED STATES DISTRICT JUDGE

8

copies provided:
Rene Gonzalez-Llorens, Esq.
Richard Burton, Esq.