# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6107-CIV-FERGUSON/SNOW

STEVE HARRIS,

    Plaintiff,

v.

DAYTON HUDSON CORPORATION
d/b/a TARGET STORES,

    Defendant.

_____/



## DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER
## DENYING IN PART MOTION FOR SUMMARY JUDGMENT

Defendant, TARGET CORPORATION ("Target"), moves for reconsideration of the Court's June 18, 2001 Order (the "June 18[th] Order") denying Target's Motion for Summary Judgment as to Plaintiff's claims for discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") (Count I) and 42 U.S.C. § 1981 ("§ 1981") (Count II), and states:

### PROCEDURAL BACKGROUND

Plaintiff filed the present lawsuit alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") (Count I) and 42 U.S.C. § 1981 ("§ 1981") (Count II). Plaintiff claims that Target discriminated against him because of his race. Plaintiff also alleged a claim for libel and slander (Count III).

On February 5, 2001, Target filed its Motion for Summary Judgment as to all counts of the Complaint. On June 18, 2001, the Court granted summary judgment as to the libel and slander claim (Count III), but denied summary judgment as to Plaintiff's two race discrimination claims (Counts I and II).



## SUMMARY OF ARGUMENT

**Target moves the Court to reconsider its Order denying summary judgment as to Plaintiff's Title VII and § 1981 claims for two very important reasons.**

First, the Court did not apply the three-part McDonnell Douglas framework required to determine the validity of Plaintiff's race discrimination claims. Specifically, while the Court found that the Plaintiff established a *prima facie* case (the first part of the McDonnell Douglas test), it did not complete the McDonnell Douglas three-part analysis by addressing the last two parts of the test: whether Target provided a legitimate, nondiscriminatory business reason for its decision to terminate Plaintiff and, next, whether Plaintiff proved that Target's business reason for the termination was a pretext for discrimination. Rather, the Court denied the Motion for Summary Judgment after applying only the first part of the McDonnell Douglas test. Target submits that an analysis of the remaining two parts of the test would have revealed an absence of a justiciable issue of material fact, warranting the entry of summary judgment on Counts I and II.

Second, the Court misapplied the law to the facts in finding that Plaintiff met a *prima facie* case of discrimination. The Court denied summary judgment on the basis that a disputed issue of fact existed as to whether Target "treated similarly situated employees outside of [Plaintiff's] classification more favorably"-- the third prong of the *prima facie* case. In doing so, the Court cited Plaintiff's testimony regarding Target's allegedly different treatment of Caucasian employees Joe Toscano and Shannon Tetrault. However, Plaintiff's evidence as to Toscano is totally hearsay, based on Plaintiff's sheer speculation without a shred of evidence -- no documents or supporting testimony were presented. Moreover, the evidence is undisputed that Toscano and Tetrault were not "similarly situated" to Plaintiff as required by Eleventh Circuit case law. Specifically, neither of those employees was accused of the same conduct as that which led to Plaintiff's termination and neither

2

was supervised by the same supervisor as Plaintiff. As such, neither employee was similarly situated to Plaintiff so as to satisfy the third prong of Plaintiff's *prima facie* case, warranting the dismissal of Counts I and II.

For the above reasons, Target respectfully requests that the Court reconsider its June 18th Order and enter Summary Judgment in its favor on Plaintiff's claims of race discrimination under Title VII and § 1981 (Counts I and II).

## MEMORANDUM OF LAW

### I    THE COURT ERRED IN FAILING TO APPLY THE MCDONNELL DOUGLAS FRAMEWORK TO PLAINTIFF'S DISCRIMINATION CLAIMS.

Title VII and § 1981 prohibit an employer from discriminating against an employee on the basis of the employee's race. Where no direct evidence of discrimination exists (as in the instant case), Title VII employs the McDonnell Douglas three-part test to analyze circumstantial evidence of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Section 1981 utilizes Title VII's analytical framework to determine whether Plaintiff meets his burden of proving discrimination. Rice-Lamar v. City of Ft. Lauderdale, 232 F.3d 836, 843 n.11 (11th Cir. 2000).

**In all discriminatory discharge cases based on circumstantial evidence, the Eleventh Circuit has applied the McDonnell Douglas framework. Moreover, this Court's own opinions on other Title VII actions show that the McDonnell Douglas must be used to analyze such actions.** Richter v. Metropolitan Dade County, 12 Fla.L.Weekly Fed. D570, 571, 1999 U.S. LEXIS 15952, *6-8 (unpublished) (S.D.Fla. Aug. 6, 1999); Armindo v. Padlocker, Inc., 71 F. Supp. 2d 1238, 1239-40 (S.D. Fla. 1998). In fact, even the case cited by the Court in its Summary Judgment

3

Order utilized the McDonnell Douglas framework. Maniccia v. Brown 171 F.3d 1364, 1368 (11th Cir. 1999).[1]

Under the McDonnell Douglas framework, Plaintiff bears the initial burden of establishing a *prima facie* case of race discrimination. McDonnell Douglas, 411 U.S. at 802. If Plaintiff establishes a *prima facie* case, the burden shifts to Target to provide a legitimate nondiscriminatory reason for the challenged employment action. Id. If Target offers a legitimate nondiscriminatory reason, the presumption of discrimination disappears and Plaintiff must come forward with evidence that the proffered reasons are pretextual. Id. Plaintiff can only overcome a summary judgment motion by either "persuading the court that a discriminatory motive more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997). "The McDonnell Douglas division of intermediate burdens serves to bring the litigants and the court expeditiously and fairly to [the] ultimate question [of whether any discrimination occurred]." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089 (1981).

**The Court denied Target's Motion for Summary Judgment without considering whether Target satisfied its burden under McDonnell Douglas of providing a legitimate non-discriminatory reason for Plaintiff's discharge.** This second step of the McDonnell Douglas analysis is critical because the Supreme Court of the United States has "stated consistently that the employee's *prima facie* case of discrimination will be rebutted if the employer articulates lawful reasons for the [adverse employment] action..." Burdine, 450 U.S. at 256.

---

[1] The analysis in Maniccia v. Brown stopped at the *prima facie* level, however, because the Court found that the plaintiff failed to make out a *prima facie* case. As a result, the employer did not have to present a legitimate, non-discriminatory reason for its action and, consequently, the Court granted the defendant's summary judgment motion. Id. at 1370.

4

Target in fact provided many lawful reasons for Plaintiff's termination: Plaintiff (i) presented a false and misleading receipt to Target, (ii) retained money based on a false and misleading receipt, (iii) could not determine how much company money he returned to the Store when confronted with the receipt discrepancy, (iv) improperly used his corporate charge card for personal purposes, (v) went into arrears on amounts owed on his corporate charge card in violation of company policy, (vi) forced subordinates to lend him money for his personal use and assist him with personal errands, (vii) had his Target credit card account closed for failure to pay amounts owed, and (viii) delayed over a year to repay his closed Target credit card account clearly is a security risk that cannot be entrusted to oversee and supervise a multi-million dollar store. As a result, Plaintiff was terminated.

"An employer's good faith belief that an employee's performance is unsatisfactory constitutes a legitimate, nondiscriminatory reason for termination." Kounelis v. Mount Sinai Medical Center of Greater Miami, Inc., 987 F. Supp. 1452 (S.D. Fla. 1997), aff'd, 166 F.3d 352 (1998)  Because the defendant need only produce, not prove, a non-discriminatory reason, this burden is "exceedingly light." Armindo, 71 F.Supp.2d at 1240 (citations omitted); Barnes v. Cochran, 944 F. Supp. 897, 901 (S.D. Fla. 1996).

More importantly, the Court also erred in not addressing whether Plaintiff met his burden of proving that Target's proffered legitimate business reason was a pretext for discrimination. (the last part of the McDonnell Douglas test). To survive a summary judgment motion, Plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could find them unworthy of credence." Id.  ***Failure to produce sufficient evidence of pretext dictates the entry of judgment against the employee.*** Simmons v Camden County Board of Education, 757 F.2d

5

1187 (11th Cir. 1985). Plaintiff is required to establish that each of Target's proffered reasons is pretextual. Combs, 106 F.3d at 1529.

Plaintiff, however, offered only his subjective opinion and speculation that Target's actions were discriminatory. Such speculation, without supportive evidence, is insufficient to establish pretext and avoid summary judgment. Carter v. City of Miami, 870 F.2d 578, 585 (11th Cir. 1989) (holding that conclusory and generalized allegations of racial bias such as "there was a racially biased attitude by management towards minority black employees" were properly struck by the district court). "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered ... extensive evidence of legitimate, non-discriminatory reasons for its actions." Isenbergh v. Knight-Ridder Newspaper Sales, Inc., 97 F.3d 436, 443-44 (11th Cir. 1996).

As set forth in Target's Motion for Summary judgment and corresponding Reply, Plaintiff has not offered any evidence demonstrating that Target's reasons are pretextual. Consequently, had the Court conducted a McDonnell Douglas analysis, it would have found that summary judgment was required.

As the above case law shows, the Court may conclude the McDonnell Douglas analysis at the *prima facie* level only if it finds that the plaintiff did not satisfy a *prima facie* case. However, the Court may not stop at the *prima facie* case level if its finds a disputed issue of fact -- the employer still retains, under the McDonnell Douglas framework, the right to present its explanation for the adverse employment action, which the plaintiff must refute to survive summary judgment. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Accordingly, the Court should reconsider its June 18th Order.

6

## II. EVEN UNDER THE LEGAL ANALYSIS UTILIZED BY THE COURT, PLAINTIFF DID NOT ESTABLISH A *PRIMA FACIE* CASE OF RACE DISCRIMINATION.

To establish a *prima facie* case of racial disparate treatment, Plaintiff must prove that:

(1) [Plaintiff] belongs to a [protected group] (2) [Plaintiff] was subjected to adverse job action; (3) [Plaintiff's] *employer treated similarly situated employees outside of his classification more favorably;* and (4) [Plaintiff] was qualified to do the job.

Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) (emphasis added). In the instant case, the Court denied summary judgment on the race discrimination claims because it found a disputed issue of fact as to part of the *prima facie* analysis: whether Target "treated similarly situated employees outside of [Plaintiff's] classification more favorably." June 18th Order at p. 7.

### A. To avoid summary judgment, Plaintiff must identify similarly situated employees who were treated differently.

To survive summary judgment, Plaintiff *must* identify a similarly situated non-African-American employee who received more favorable treatment. Walker v. Mortham, 158 F.3d 1177, 1193 (11th Cir. 1998); Holifield, 115 F.3d at 1562. "The adequacy of the comparators is crucial." Marshall v. Western Grain Co., Inc., 838 F.2d 1165, 1168 (11th Cir. 1988). **When determining whether employees are similarly situated,"it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways."** Holifield, 115 F.3d at 1562 (11th Cir. 1997).

In fact, both this Court's past opinion and the case cited by the Court in its June 18th Order set forth the stringency of this third prong of a *prima facie* case. Maniccia v. Brown 171 F.3d 1364, 1368 (11th Cir. 1999); Richter, 12 Fla.L.Weekly Fed. at D571, 1999 U.S. LEXIS 15952, *6-9. For example, the Maniccia Court stated:

> In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways... The

7

> most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.

Maniccia, 171 F.3d at 1368. Likewise, in Richter, Judge Ferguson wrote:

> In this case, [plaintiff] has failed to show a prima facie case of discriminatory treatment under Title VII. Specifically, [plaintiff] failed to show that she was treated differently than similarly situated persons. "In determining whether employees are similarly situated in all relevant aspects...it is necessary to consider whether employees are involved in or accused of same or similar conduct and are disciplined in different ways, with the most important factors in disciplinary context being the nature of offenses committed and nature of punishments imposed." [citations omitted].

Richter, 12 Fla.L.Weekly Fed. at D571, 1999 U.S. LEXIS 15952, *7-8.

### B. Plaintiff is unable to identify similarly situated employees who were treated differently, and thus, summary judgment is warranted.

Plaintiff identifies two individuals whom he believes engaged in misconduct similar to his, but received less severe punishments: Joe Toscano and Shannon Tetrault.

As reflected in the Court's June 18th Order, Plaintiff alleges that Toscano, a Caucasian Store Manager, improperly marked down merchandise in violation of company policy but was not terminated. However, the record evidence shows a significant difference between the misconduct of Toscano versus that of Plaintiff: Toscano was accused of <u>one</u> policy violation that did not involve suspected theft. Plaintiff was accused of *__eight (8)__* violations of company policy, the most serious of which was his suspected theft of money from Target. Misconduct engaged in by comparators is easily distinguished from that of Plaintiff on the basis of both the quantity and the quality of the misconduct. See Maniccia, 171 F.3d at 1368 (female Title VII plaintiff failed to meet her burden of pointing to a similarly situated male treated more favorably; misconduct of male comparators was distinguishable from plaintiff's where each comparator involved in a single incident of misconduct,

8

whereas plaintiff committed at least four policy violations); Richter, 12 Fla.L.Weekly Fed. at D571, 1999 U.S. LEXIS 15952 at *9-10 (Judge Ferguson granted summary judgment against female Title VII plaintiff where plaintiff failed to make out *prima facie* case; misconduct of male comparators was distinguishable from plaintiff's where each comparator was involved in fewer or different incidents of misconduct than was plaintiff).

Moreover, Plaintiff has not presented any evidence about Toscano, but has simply presented **his own hearsay conclusions about Toscano's alleged policy infraction and corresponding discipline by Target.** Hearsay statements cannot form the basis of an opposition to a summary judgment motion. Fed. R. Civ. P. 56(e) (requiring that affidavits be made "on personal knowledge" and "set forth such facts as would be admissible in evidence"); Macuba v. Deboer, 193 F.3d 1316, 1322-23 (11th Cir. 1999) (**"The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment."**).

Shannon Tetrault, a Caucasian District Captain, is likewise not a comparator to Plaintiff for several reasons. First, Tetrault was accused of breaching a policy involving the continued use of an IOU accounting system which had been discontinued at the store. As such, Tetrault was only accused of one policy violation which is distinguishable from Plaintiff's in that such violation it did not involve any suspected theft. As discussed above, Tetrault's violation did not compare to Plaintiff's eight serious policy violations.

Second, Tetrault was never supervised by Mark Hastings (Plaintiff's supervisor), but by Plaintiff himself. Indeed, Plaintiff was in charge of disciplining Tetrault for any policy violations. Accordingly, Tetrault cannot be Plaintiff's comparator since Plaintiff himself, and not Hastings, was her supervisor. The Eleventh Circuit has recognized that, "disciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis." Jones v. Gerwens,

9

874 F.2d 1534, 1541 (11th Cir. 1989); Richter, 12 Fla.L.Weekly Fed. at D571, 1999 U.S. LEXIS 15952 at *9-10 (comparators must have been supervised by same person as the plaintiff); Weaver v. Tech Data Corp., 66 F. Supp. 2d 1258, 1270 (M.D. Fla. 1999) (comparators must have dealt with the same supervisor). The failure to show a common supervisor "alone probably precludes a showing of similarity because 'when different decisionmakers are involved, two decisions are rarely similarly situated in all relevant aspects.'" Sanguinetti v. United Parcel Service, Inc., 114 F. Supp. 2d 1313, 1317 (S.D. Fla. 2000) (citing Radu v. Kimberly Clark Corp., 219 F.3d 612 (7th Cir. 2000)).

Third, Tetrault was not a Store Manager, but rather, a department supervisor. Clearly, Target's expectations of its Store Managers are significantly higher than those of a department supervisor. A Target Store Manager has an immense amount of responsibility in that s/he is in charge of an entire Target store and its employees. (Ex A, Gillespie Aff. ¶ 3.)[2] A Target Store Manager controls a multi-million dollar business, oversees all store funds, and manages budgets. Id. A Target Store Manager must execute the highest level of leadership and example within the store. Id. He or she must direct the store's merchandising, operations, and personnel functions toward attaining maximum profits, sales, and return on investment. Id.; Ex. A(1), Store Team Leader Job Description.). Plaintiff admits that a Store Manager has a higher degree of responsibility than someone who is not in management. (Plaintiff Dep. at 136-37.) In sum, Tetrault reported to the Plaintiff and followed his orders as her store manager. Consequently, Tetrault is clearly not "similarly situated" to Plaintiff.

Because Plaintiff has not satisfied his burden of showing that any non-African-American similarly situated employee was treated more favorably, Plaintiff's case cannot succeed. See

---

[2] Exhibit cites herein refer to the exhibits filed in conjunction with Defendant's Motion for Summary Judgment.

10

Sistrunk v. Neumann, 13 Fla. L. Weekly Fed. D337, D338 (S.D. Fla. March 31, 2000) (granting employer's motion for summary judgment on disparate treatment claim because plaintiff could not identify any similarly situated non-African-American employee); St. Hillaire v. The Pep Shop Boys, 73 F. Supp. 2d 1350, 1361 (S.D. Fla. 1999) (granting summary judgment where plaintiff did not show that other employees were similarly situated). Where the plaintiff in a race discrimination claim fails to show that similarly situated non-African-American employees were treated more favorably, summary judgment is proper. Holifield, 115 F.3d at 1562. Accordingly, the Court should grant summary judgment on Plaintiff's race claims.

## CONCLUSION

Defendant, TARGET CORPORATION, respectfully requests that the Court reconsider its Order of June 18, 2001 and that it enter Summary Judgment in its favor and against Plaintiff on Plaintiff's claims of race discrimination under Title VII and § 1981.

Respectfully submitted,

SHUTTS & BOWEN LLP
Attorneys for Defendant
201 South Biscayne Boulevard
1500 Miami Center
Miami, Florida 33131
(305) 358-6300
(305) 347-7386 (facsimile)

By: _____

Sheila M. Cesarano
Florida Bar Number 708364
Rene Gonzalez-LLorens
Florida Bar Number 0053790

11

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was faxed and mailed on this 21st day of June 2001, to

Richard J. Burton, Esq.
Richard J. Burton & Associates, P.A.
18305 Biscayne Boulevard, Suite 300
Miami, Florida 33160.
Tel: (305) 705-0888
Fax: (305) 935-9542
Attorney for Plaintiff

_____
OF COUNSEL

MIADOCS 427431 1 JEA

12