**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
FT. LAUDERDALE DIVISION
Case No. 00-6107-CIV-FERGUSON
MAGISTATE JUDGE SNOW

STEVE HARRIS,
Plaintiff,

vs.

TARGET CORPORATION f/k/a
DAYTON HUDSON CORPORATION
d/b/a TARGET STORES

______________________________/

NIGHT BOX
FILED
NOV 9 2001
CLARENCE MADDOX
CLERK, USDC / SDFL / FTL

**PLAINTIFF'S MOTION FOR JUDGEMENT AS A MATTER OF LAW OR , IN THE ALTERNATIVE MOTION FOR NEW TRIAL AND SUPPORTING MEMORANDUM OF LAW**

COMES NOW, the Plaintiff, Steve Harris, hereinafter named "Harris or Plaintiff", and sets forth his Plaintiff's Motion For Judgment As A Matter Of Law or, in the alternative, Motion For New Trial and Supporting Memorandum Of Law, wherein Plaintiff timely moved for a Rule 50 motion, on liability, at the close of Defendant's evidence (hereinafter called "Target") pursuant to Fed. R. Civ. P. 50 (a). Plaintiff, further, in the alternative, respectfully requests that the Court grant a Motion for a New Trial, pursuant to Fed. R. Civ P 50(b) and that the Court direct the verdict to reflect judgment in favor of Plaintiff's and that in the alternative the court grant the motion for new trial pursuant to Rule 59(e) based on the grounds supported herein. The grounds for the Rule 50 and 59 motion are set forth in the following memorandum of law:

**Preliminary Statement and Overview**

In March 1999, Plaintiff was terminated by Target for alleged abuse of authority in the cash handling while he was the only African American Store Team Leader (Store

141

Manager) in the Broward and Palm Beach District. At all times material, the District Manager, was Mark Hastings and the Regional Personnel Director was Terry Gillespie. Direct evidence of Discrimination and racially based comments and decisions were presented to the Jury, both by Plaintiff and his wife and by a former peer, Robert Van Savage.

Plaintiff was terminated from his position, by the Defendant for "being a security risk". Plaintiff instead contends that the reasons behind his termination was actually race related and thus in violation of Title VII of the Civil Rights Act, and 42 U.S.C. § 1981.

Pursuant to a Motion, by Defendant, the Court bifurcated the trial into first a liability determination and then, if liability was found, the same jury would hear testimony as to damages.

## STATEMENT OF FACTS

Plaintiff brings this action of his 1999 termination where he was terminated for allegations of wrongdoing. Plaintiff's termination followed a discrepancy over a tip left at a company-sponsored dinner party. Thereafter an investigation was initiated regarding Plaintiff's personal accounts and resulted in Plaintiff's termination. In the process of the investigation, the head security officer made derogatory comments regarding Plaintiff, his race, and ownership of personal property to a third party. Following Plaintiff's termination, another non-minority manager replaced him. Plaintiff was the only minority that held such a position in the geographical area and many other non-minority managers had similar stature.

During the trial, from the opening Argument of Defendant's Counsel forward, and throughout the trial, Defendant's Counsel alleged that the Defendant would demonstrate

numerous crimes, and other "bad conduct" which the Defendant had allegedly 'discovered' after the incident involving the tip had been brought to light, demonstrating that the Plaintiff had always been a "danger" to the company.

In fact, virtually all of the allegations made in opening argument, and all the 'crimes' were both non-existent. There was NO proof to support the inflammatory opening Argument, for which the Court had warned Defense Counsel that if she failed to prove her opening Argument that Defendant's Counsel would be risking reversal, and further that virtually all the 'discovered information was sought and obtained by Hastings long BEFORE the discovery of the discrepancy regarding the tip!

In Defense Counsel's closing Argument, she argued theories unsupported by the evidence, argued that if the Jury found liability, on the part of the Defendant, then the Jury would have to continue sitting, as a jury for a further extended period of time, to try to frustrate the jurors. All of these errors were compounded, by Defendant's Counsel making personal attacks on Plaintiff's Counsel. All of these errors, were objected to, in a timely fashion. The Court sustained the objections by Plaintiff's Counsel, but the damage was so great that Defendant committed reversible error.

In fact, the jury in deliberation, over 5 hours found that Defendant had discriminated against Plaintiff, on the basis of his race, but 'determined that Plaintiff would have been fired, anyway.' The only evidence of, which was supported, during the trial, by competent evidence was the error in the tip, in which the jury, in an explicit interrogatory found that the Plaintiff was treated in a manner dissimilar to white managers.

## PROCEDURAL HISTORY

This action was commenced in the United States District Court in the Southern District of Florida, Ft. Lauderdale Division and a jury trial was held before the Honorable Wilkie Fergerson on October 10-October 22, 2001. At the close of defendant's case, plaintiff moved the Court to strike Defendant's Affirmative defenses and for a Rule 50(a) directed verdict on the grounds that Defendant had not proven said defenses and had actually surrendered by conceding the reasons they promulgated as grounds for termination of Plaintiff. Said motions were denied. In addition, Plaintiff objected to the form and format of the jury interrogatories on the grounds that the wording of the 2nd interrogatory would lead to jury confusion and an inconsistent verdict. The Jury returned a verdict on October 22, 2001 finding that Defendant Target discriminated against Plaintiff based on race and that Defendant would have terminated Plaintiff despite the discrimination.

When considering a motion for a new trial, the Court may reweigh the evidence; it may set aside a verdict because it is against the clear weight of evidence, the damages are excessive or substantial trial errors have occurred. See National Car Rental Sys. v. Better Monkey Grip Co., 511 F. 2d 724, 730, (5 C.A., 1975).

## Rule 50(a) Standard

(a) Judgment as a Matter of Law.

(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense

that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

(2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

**Rule 50(b) Standard**

(b) Renewing Motion for Judgment After Trial; Alternative Motion for New Trial. If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment--and may alternatively request a new trial or join a motion for a new trial under Rule 59. In ruling on a renewed motion, the court may:

(1) if a verdict was returned:

(A) allow the judgment to stand,

(B) order a new trial, or

(C) direct entry of judgment as a matter of law; or

(2) if no verdict was returned:

(A) order a new trial, or

(B) direct entry of judgment as a matter of law.

A motion for a judgment n. o. v. or directed verdict tests the sufficiency of the evidence to support a jury verdict. Boeing Co. v. Shipman, 411 F.2d 365, 373-74 (5 C.A. 1969) (en banc ). The Court should consider all of the evidence including that evidence which supports the non-mover's case but in the light and with all reasonable inferences most

favorable to the party opposed to the motion If there is substantial evidence opposed to the motions evidence of such quality and weight that "reasonable and fair-minded" men in the exercise of impartial judgment might reach different conclusions. Furthermore, if an improper cause invades the trial a new trial should be granted. O'Neil v W.R. Grace & Co., 410 F. 2d 908 (5 C.A., 1969) at p. 913-915.

## Opening and Closing Arguments[1]

Both Counsel presented opening statements at the start of trial presenting their cases. Plaintiff counsel stated that they would prove that the discrimination was a result of a direction by the Terry Gillespie and Mark Hastings, both managers and supervisors of Plaintiff. Further that the discrimination would be proven based on remarks made in the decision maker's presence and that defendant worked behind plaintiff never giving him a chance to redeem his mistake with the Shooter's voucher, and in order to build a case against plaintiff for the termination by collecting statements of "hearsay and heretic", that the Defendant "singled" plaintiff out, something that was not done to other white managers.

Defendant's counsel opened her case with statements that Target would prove that Plaintiff had poor performance, mishandled cash, bought a toy and towels against company policy, was behind on his personal Target card, used his corporate American Express card to make personal purchases, borrowed money from other employees and did not repay them, all based on hearsay statements. Plaintiff objected to these opening statements during the opening on numerous occasions and the Court further admonished

[1] Summary of arguments in the absence of trial transcripts, which have been Ordered but are not available at the time of motion. The transcripts will be filed as soon as they have been prepared.

Defense counsel that the Court would hold counsel to these proofs, or there would be consequences.

At the close of the evidence, Plaintiff stated why it did prove that Target did indeed discriminate against plaintiff and that all the Defendant's proffered reasons as stated were merely a "smokescreen" or pretext for the termination of Plaintiff. Plaintiff admitted to making a mistake in the calculation of the receipt but Target did not seek counseling as stated in its employee manuals and did not seek any recourse like deducting the monies from Plaintiff's paycheck.

Defendant rather than summing the evidence as is customary, made several errors which led to jury confusion and an improper verdict. First, all but one of the Affirmative defenses were never proved or offered as proof at opening and in the Answer but were abandoned by the Defense at closing. Second, the Defense suggested to the jury that a finding for Plaintiff would lead to a longer stay for the jury. Third, the Defense attacked the character of Plaintiff's counsel rather than the evidence. In its summation, the confusing and prejudicial remarks offered by the Defense were not cured by the Court's instruction, led to sympathy for the Defendant and were thus evidenced by the inconsistent verdict of the jury.

There is no doubt that where a closing argument misleads the jury, a reversal of the verdict, by the trial judge is the appropriate remedy. Blossom v. CSX Transp, 13 F.3d 1477, (11 C.A., 1994).

Statements are improper where they are "calculated to inflame [the] jury," United States v. Boyd, 131 F.3d 951, 955 n. 4 (11th Cir.1997) (per curiam), cert. denied, --- U.S. ----, 119 S.Ct. 211, 142 L.Ed.2d 173 (1998), see also,

Edwards, v. Sears, Roebuck & Co. 512 F.2d 276, *;( 5 C.A., 1975), and their purpose is to persuade the jurors to render a decision based on their emotional response to the defense counsel, rather than the evidence introduced at trial, Contrary to McWhorter's assertions, the record clearly indicates that the *Post-Herald* theory had been eliminated from the case during pretrial conference and throughout the trial. Trial counsel's closing argument was in direct violation of the district court's ruling and was thus highly improper. *See, e.g.* Brown v Royalty**,** 535 F. 2d 1024, 1028, (8 C.A., 1976) repeated, deliberate reference to evidence excluded by district court is clear misconduct and grounds for new trial); Adams Laboratories, Inc. v Jacobs Engineering Co., 761 F. 2d 1218, 1226 (7 C.A., 1985) (plaintiff's counsel's reference to excluded evidence in direct contravention of the district court's order held to constitute prejudicial error). These **improper arguments** also likely affected the jury's verdict: this retaliation theory was injected into the case in the rebuttal portion of McWhorter's closing argument, immediately before the jury began to deliberate; defense counsel had no opportunity to respond to these claims; and the jury noticed that the *Post-Herald* complaint was not included in the exhibits.

see United States v. Bailey, 123 F.3d 1381, 1400 (11th Cir.1997). In Adams Laboratories, Inc. v. Jacobs Engineering Co.**,** (id) the Court wrote, " We are aware that to constitute reversible error, references to insurance coverage must be "due to some misconduct, or improper remarks or questions of counsel, oft times repeated, and calculated to influence or prejudice the jury." There Adams' reference to the comparative size and financial wealth of Jacobs and Adams was improper. "Courts have held that appealing to the

sympathy of jurors through references to the relative wealth of the defendants in contrast to the relative poverty of the plaintiffs is improper and may be cause for reversal. *See, e.g.,* *Draper v. Airco, Inc.*, 580 F.2d 91 (3rd Cir. 1978); (also citing) *Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276 (5th Cir. 1975). " See also, Johnson v Colglazier, 348 F. 2d 420 (5 C.A., 1965).

It is proper for the Court to grant a New Trial, where portions of the case referred to in the opening of the case have been eliminated from the case or where there has been no substantial competent evidence to support the position. A party should not not benefit from making outrages charges, and then fail to demonstrate their validity, in the trial McWhorter v City of Birmingham, 906 F. 2d 674, (11 C.A., 1990)

The Jury Interrogatories/ Verdict form

The verdict form proposed the following questions to the jury:

1. Mr. Harris' race was a substantial or motivating factor that prompted Target to discharge Mr. Harris?
2. Mr. Harris would have been discharged from employment for other reasons even in the absence of consideration of his race?

The jury interrogatories/ verdict form led to jury confusion and undermines the framework of McDonnell Douglas and its progeny in the answering of question #2. Plaintiff objected to question 2 prior to its delivery to the jury in that it would lead to confusion and as worded would deliver an inconsistent verdict. The purpose of Question 2 as stated was to overcome that Target fired Plaintiff despite the discrimination. However, the question instead misleads the jury into answering the question in a manner not consistent with question 1 because then there would be no discrimination in

terminating Plaintiff. By finding discrimination, Target would need not have terminated and thus the three part analysis of the pattern jury instructions would be needed rather than parts 1 and 2 as used in this case. The 8th Cir., in Hicks v. Brown Group, Inc. 902 F.2d 630 (8th Cir. 1990) discussed this issue. They stated:

"...[in] Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989) (plurality opinion) (Price Waterhouse), requires that judgment be entered in its favor because the jury's answer to Special Interrogatory No. 10 established that Hicks would have been discharged even if his race was not taken into account. Price Waterhouse is a mixed-motive Title VII case decided by the Supreme Court while this appeal and cross-appeal was pending. In Price Waterhouse, the plurality held that once a plaintiff proves that a prohibited factor "played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the [impermissible factor] into account." Id. at 1795 (emphasis added). Brown Group argues that Price Waterhouse implicitly overruled Bibbs v. Block, 778 F.2d 1318, 1324 (8th Cir. 1985) (en banc), which held that an employer who shows that it would have made the same decision may avoid promotion or reinstatement, but not liability under Title VII. Brown Group further argues, without discussing the different purposes and legislative histories of Title VII and Section 1981, that Price Waterhouse also undermines this court's Section 1981 decisions and the Special Interrogatories in this case."

Further, the second question as offered do not seek to support the required fact finder that is requisite for a discrimination case of this nature. The Plaintiff produced

sufficient evidence to support a verdict that it did meet its burden of showing by a preponderance of the evidence that the company would not have discharged Plaintiff even if it had not considered his race. Plaintiff showed that the decisions to terminate were a mere "smokescreen" or pretext to the reasons offered by Defendant and that the Price Waterhouse holding did not apply because it was not a case of mixed motive. Instead the instant case involved "pretext" which Plaintiff has clearly shown by the testimony of Mr. Van Savage, Mr. Barth and Mr. Hastings that there were **no one in that district was terminated for reasons of being a "security risk**" and that in similar situations, persons were counseled not terminated, as per company policy. Further, the decision makers sought to "pad the file" with allegations to show that they were terminating plaintiff for legitimate business reasons that were never relied upon during termination.

The true standard is whether the employee has "cast doubt" on the reasonable explantion proffered by management. The verdict form should have shifted the burden to the employer to show that the polcies were applied even handed. Reeves v Sanderson Plumbing Products, Inc. 530 U.S. 133, 120 S. Ct. 147, 147 L. Ed 2d 105 (2000) See also Kientzy, 990 F.2d at 1060 (supervisor took an "intense" interest in Kientzy's investigation, but "never followed up or investigated rumors about male employees who had gone home while on duty"); Brown v. East Miss. Elec. Power Ass'n, 989 F.2d at 863 (black employee discharged because of customer complaint but white employee only given warning); Jiles v. Ingram, 944 F.2d 409, 412 (8th Cir. 1991) (black firefighter discharged for insubordination but white firefighter not discharged); See also Damon v. Fleming Supermarkets 196 F.3d 1354 (11th Cir. 1999)

The standard the Court must apply in deciding whether there has been reversible error "is when [the Court] is left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations" Pate v Seaboard R.R. Inc. 819 F. 2d 1074 (11 C.A., 1987) citing Johnson v Bryant 671 F. 2d 1276, 1280 (11 C.A., 1982). See also, Uhl v Echols Transfer Company, 238 F. 2d 760, (5 C.A., 1956).

Adams Laboratories, Inc. v. Jacobs Engineering Co, supra, dealt with the cumulative effects of improper presentation of the case before the jury, prejudicial argument and confusion surrounding the jury's understanding of the instructions. A new Trial was Mandatory, there, as in the case at bar!

Thus, the Defense has failed to meet this burden as stated herein and the verdict should be directed to reflect that standing.

Based upon the foregoing, Plaintiff, Harris respectfully requests that the Court grant a Motion for a New Trial, pursuant to Fed. R. Civ P 50(b) and that the Court direct the verdict to reflect judgment in favor of Plaintiff's and that in the alternative the court grant the motion for new trial pursuant to Rule 59(e).

**Conclusion**

Wherefore, Plaintiff prays that this Court will enter judgment in favor of Plaintiff or in the alternative grant a motion for new trial and such other relief be granted as is just and equitable.

RICHARD J. BURTON & ASSOCIATES, P.A.
Attorney for PLAINTIFF
18305 Biscayne Blvd., Suite 300
Miami, FL 33106
(305)705-0888 Fax (305)935-9542

by: ___________________________
Richard J. Burton, Esq. FBN 179337

The standard the Court must apply in deciding whether there has been reversible error "is when [the Court] is left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations" Pate v Seaboard R.R. Inc. 819 F. 2d 1074 (11 C.A., 1987) citing Johnson v Bryant 671 F. 2d 1276, 1280 (11 C.A., 1982). See also, Uhl v Echols Transfer Company, 238 F. 2d 760, (5 C.A., 1956).

Adams Laboratories, Inc. v. Jacobs Engineering Co, supra, dealt with the cumulative effects of improper presentation of the case before the jury, prejudicial argument and confusion surrounding the jury's understanding of the instructions. A new Trial was Mandatory, there, as in the case at bar!

Thus, the Defense has failed to meet this burden as stated herein and the verdict should be directed to reflect that standing.

Based upon the foregoing, Plaintiff, Harris respectfully requests that the Court grant a Motion for a New Trial, pursuant to Fed. R. Civ P 50(b) and that the Court direct the verdict to reflect judgment, on liability, in favor of Plaintiff's, that the case be tried as to actual and pumitive damages, and that in the alternative the court grant the motion for new trial pursuant to Rule 59(e).

## CONCLUSION

Wherefore, Plaintiff prays that this Court will enter judgment, on liability, in favor of Plaintiff or in the alternative grant a motion for new trial and such other relief as is just and equitable.

RICHARD J.BURTON & Associates, P.A.
18305 Biscayne Blvd. Suite 300
Miami, FL 33160
(305)705-0888 Fax (305)935-9542

By: ____________________
Richard J. Burton, Esq. FBN 179337

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true copy of the foregoing Motion was mailed to Sheila Caesarano, Esq., SHUTTS & BOWEN LLP, 1500 Miami Center, 201 South Biscayne Blvd., Miami, FL 33130, and to Ms. Annelies Mourning, Esq., 4276 Pine Hollow Cir. Greenacres, FL 33463, on November 9, 2001.

RICHARD J. BURTON & ASSOCIATES, P.A.
18305 Biscayne Boulevard, Suite 300
Miami, FL 33160
Tel: (305) 705-0888 Fax: (305) 935-9542

By:______________________________
Richard J. Burton F.B.N. 179337