UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6107-CIV-FERGUSON/SNOW

STEVE HARRIS,

    Plaintiff,

v.

DAYTON HUDSON CORPORATION
d/b/a TARGET STORES,

    Defendant.

_____/

**DEFENDANT'S *EMERGENCY* MOTION TO ENJOIN PLAINTIFF'S COUNSEL FROM UNETHICAL CONDUCT BY CONTACTING JURORS,
MOTION TO STRIKE AFFIDAVITS, MOTION FOR SANCTIONS,
AND INCORPORATED MEMORANDUM OF LAW**

Defendant, TARGET CORPORATION ("Target"), pursuant to S.D. Fla. L.R. 11.1(e), Rule 4-3.5 (d)(4) of the Rules Regulating the Florida Bar, and Fed. R. Evid. 606(b), moves the Court on an emergency basis to enter an Order (1) enjoining Plaintiff's attorneys from further contacting jurors who decided this matter, (2) striking the affidavits (statements of one juror and hearsay statements of a second juror) attached to Plaintiff's Motion for Judgment as a Matter of Law, *et al.*, which were unethically and improperly obtained, and (3) sanctioning Plaintiff's counsel for their deliberate violations of this Court's Local Rules, the Rules of Professional Conduct, and the Federal Rules of Evidence.

**SUMMARY OF ARGUMENT**

The privilege of being a lawyer bestows upon us all a concomitant obligation to honor the legal profession. It is axiomatic that every lawyer must ensure that the Rules of Professional Conduct, as well as the Local Rules of this Court, are not deliberately defiled, disobeyed, and



discarded to the dustbin of unprincipled conduct. Plaintiff's counsel – Richard Burton and Annelies Mouring ("Plaintiff's counsel") – have engaged in the worst breach imaginable in the justice system: contacting jurors post-trial because of a jury verdict for the defense.

It is with outrage that undersigned petitions this Court on an emergency basis (due to the on-going nature of Plaintiff's counsel's ethical violations) to immediately enjoin Plaintiff's counsel – both Richard Burton and Annelies Mouring – from having any further contacts with the jurors who decided this case. Upon receiving Plaintiff's Motion for Judgment as a Matter of Law, *et al.*, undersigned counsel was not surprised by Plaintiff's counsel's blatant misrepresentation on his certificate of service date, or that Plaintiff's counsel ignored this Court's page limitation rules. What was truly revolting was discovering that Plaintiff's counsel had surreptitiously contacted at least two jurors – Gwen Thorpe and Gregory Thomas – behind the Court's back and without notifying opposing counsel. Plaintiff's counsel have obtained affidavits from these two jurors in an inconceivable attempt to reverse a jury verdict by violating Rule 4-3.5 (d)(4) of the Rules Regulating the Florida Bar, S.D. Fla. L.R. 11.1(e), and Fed. R. Evid. 606(b).[1]

Target moves the Court to enjoin Plaintiff's counsel, Richard Burton and Annelies Mouring, and any of their agents (including Plaintiff and his agents) from contacting any jurors. So far, we know that Plaintiff's counsel have contacted and obtained affidavits from Ms. Thorpe and Mr. Thomas. We also know that Plaintiff's counsel has informed these jurors of evidence not admitted

---

[1] The Court should note that this Motion is *not* Target's Response to Plaintiff's Motion for Judgment as a Matter of Law, *et al.* Such Response will be timely filed within the days allotted, which is not until June 17, 2002. However, due to the emergency need for the relief requested and to stop any further unethical behavior, Target has had no choice but to file this motion on an expedited basis.

at trial by the Court, such as, for example, the recruiter's fee reduction. The Court should not permit Plaintiff's counsel to continue their unethical behavior and improper *ex parte* contacts with jurors.

Target also moves the Court to strike the affidavits attached to Plaintiff's Motion for Judgment as a Matter of Law for two reasons. First, the affidavits were unethically and improperly obtained. The Court should not condone Plaintiff's counsel's deliberate disregard of Rule 4-3.5 (d)(4), Local Rule 11.1(e), and Fed. R. Evid. 606(b), by considering these improper affidavits when determining Plaintiff's Motion. Second, the Eleventh Circuit has repeatedly held that coercion of jurors by co-jurors is an *internal* influence which cannot be investigated or relied upon by a district court to impeach a jury verdict.

Finally, Target moves the Court to sanction Plaintiff's counsel. Every lawyer knows that it is unethical for an attorney to furtively contact jurors after a trial without the Court's approval and without notifying opposing counsel. Every lawyer is aware that he or she is required to abide by the Rules of Professional Conduct. We do not know what Plaintiff's counsel told Ms. Thorpe or Mr. Thomas (or if they were somehow influenced), or whether Plaintiff's counsel contacted other jurors. All we know is that Plaintiff's counsel blatantly disregarded the Rules of Professional Conduct and this Court's Local Rules in an attempt to overturn a jury verdict.

The Court should also sanction Plaintiff's counsel because their contacts and conversations with these two jurors (both of whom are African-American) has done a disservice to the professional integrity of the jury system. Plaintiff's counsel have sowed in these African-American jurors' minds the notion that the jury system in this Court is no more than a racist tool. Moreover, and as the affidavits show, Plaintiff's counsel have had conversations with these jurors informing them about evidence excluded by the Court so as to convince the jurors to sign an affidavit.

More appalling and in support of sanctions is that Plaintiff's counsel, Richard Burton, has been reprimanded by the Florida Bar for unethical conduct on at least two prior occasions. In 1993, Mr. Burton was suspended and in 1992 was admonished by the Florida Bar. Shamefully, Mr. Burton continues to ignore the Rules Regulating the Florida Bar. Such repeated indifference to the ethical rules and this Court's Rules cannot be condoned.

## FACTS

1.  On January 21, 2000, Plaintiff filed the instant lawsuit alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") (Count I) and 42 U.S.C. § 1981 ("Section 1981") (Count II), specifically claiming that Target discriminated against him because of his race. Plaintiff also filed a claim for libel and slander (Count III).

2.  On June 18, 2001, the Court entered summary judgment on Plaintiff's libel and slander claim (Count III).

3.  From May 6 to 16, 2002, this case was tried before a jury of seven individuals, three of whom are African-American.

4.  Gwen Thorpe and Gregory Thomas were two jurors in the case. Ms. Thorpe and Mr. Thomas are African-American.

5.  On May 16, 2002, the jury entered a verdict for Target, and, on the same day, the Court entered Final Judgment for Target.

6.  On June 4, 2002, Target's counsel received Plaintiff's *24-page* Motion for Judgment as a Matter of Law. Mr. Burton certifies that Plaintiff's Motion was mailed to Target's counsel on May 31st, but the envelope enclosing Plaintiff's Motion was date-stamped on June 3rd, a typical misrepresentation by Mr. Burton.

7.    The affidavit of juror Gwen Thorpe is attached to Plaintiff's Motion for Judgment as a Matter of Law.

8.    The affidavit of attorney Annelies Mouring (Plaintiff's counsel) is also attached to Plaintiff's Motion for Judgment as a Matter of Law. Ms. Mourning's "affidavit" attests that she took a telephone statement from Mr. Thomas, presents Mr. Thomas' hearsay statement, and indicates that Plaintiff's counsel will file Mr. Thomas' affidavit upon its receipt.

9.    Plaintiff's counsel did not request permission from the Court to contact any jurors, as required by Local Rule 11.1(e), Rule 4-3.5 (d)(4), and Fed. R. Evid. 606(b), and did not contact Target's counsel to inform them that they intended to contact the jurors.

## ARGUMENT

### I.    THE COURT SHOULD ENJOIN PLAINTIFF'S COUNSEL FROM HAVING ANY FURTHER CONTACT WITH THE JURORS.

Plaintiff's counsel violated Rule 4-3.5(d)(4) of the Rules Regulating the Florida Bar (Communication with Jurors) by contacting jurors. Rule 4-3.5(d)(4) states as follows:

> A lawyer shall not ... after dismissal of the jury in a case with which the lawyer is connected, initiate communication with or cause another to initiate communication with any juror regarding the trial except to determine whether the verdict may be subject to legal challenge; provided, a lawyer may not interview jurors for this purpose unless the lawyer has reason to believe that grounds for such challenge may exist; and provided further, before conducting any such interview the lawyer must file in the cause a notice of intention to interview setting forth the name of the juror or jurors to be interviewed. A copy of the notice must be delivered to the trial judge and opposing counsel a reasonable time before such interview.

R. Regulating Fla. Bar 4-3.5(d)(4). Plaintiff's counsel violated Rule 4-3.5(d)(4) because they contacted jurors (i) lacking any reason to believe that grounds for such challenge existed (as evidenced by the lack of grounds in the jurors' affidavits); (2) failing to file a notice of intention to

interview jurors and setting forth the name of the jurors to be interviewed; and (3) failing to send any notice to Judge Ferguson and Target's counsel within a reasonable time before such interview.

Plaintiff's counsel also violated S.D. Fla. L.R. 11.1(e) (Relations with Jury). Local Rule 11.1(e) states in relevant part:

> Before, during, and after the trial, a lawyer should avoid conversing or otherwise communicating with a juror on any subject, whether pertaining to the case or not. Provided, however, after the jury has been discharged, upon application in writing and for good cause shown, the Court may allow counsel to interview jurors to determine whether their verdict is subject to legal challenge. In this event, the Court shall enter an order limiting the time, place, and circumstances under which the interviews shall be conducted. The scope of the interviews should be restricted and caution should be used to avoid embarrassment to any juror and to avoid influencing the juror's action in any subsequent jury services.

Id. Plaintiff's counsel violated Local Rule 11.1(e) because they communicated with jurors without any application in writing and for good cause shown, and without Court approval.

Plaintiff's counsel further violated Fed. R. Evid. 606(b) (Inquiry into validity of verdict or indictment). Rule 606(b) states in relevant part:

> Upon an inquiry into the validity of a verdict or indictment, *a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith,* except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly to bear upon any juror. *Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded rom testifying be received for these purposes.*

Fed. R. Evid. 606(b) (emphasis added). Plaintiff's counsel violated Rule 606(b) by allowing jurors to testify as to matters involved in the course of the jury's deliberation.

The Court should enjoin Plaintiff's counsel from continuing to violate Rule 4-3.5(d)(4), Local Rule 11.1(e), and Evidentiary Rule 606(b), by contacting jurors. By allowing Plaintiff's

counsel to continue to harass jurors through improper "fishing expeditions," the Court would condone Plaintiff's counsel's unethical behavior.

## II. THE COURT SHOULD STRIKE ALL AFFIDAVITS IMPROPERLY AND UNETHICALLY OBTAINED.

Plaintiff's counsel have submitted two affidavits regarding the jury deliberation. First, Plaintiff's counsel submitted Ms. Thorpe's affidavit to support the proposition that a new trial should be granted because she claims that (1) she was coerced to decide for Target by the other jurors, and (2) she would have decided differently if she would have known about the evidence excluded by the Court. Second, Plaintiff's counsel submitted attorney Mouring's affidavit attesting to her hearsay conversation with Mr. Thomas. According to Ms. Mouring's affidavit, Mr. Thomas will testify that a new trial is needed because he was similarly coerced to decide for Target by the other jurors,

The Court should strike the affidavits for two reasons. First, the affidavits were unethically and improperly obtained. Second, coercion of jurors by co-jurors is an internal influence which, under Fed. R. Evid. 606(b) cannot be investigated or relied upon by a district court to impeach a jury verdict.

In United States v. Prosperi, 201 F.3d 1335 (11th Cir. 2000), the Eleventh Circuit upheld the district court's decision declining to interview jurors regarding their verdict under Rule 606(b) despite allegations that a juror had been pressured to vote with the majority. The Prosperi court held that, if the district court had investigated such allegations of internal influence during deliberations, its inquiry "may have invited reversible error." 201 F.3d at 1340-41.

See also United States v. Norton, 867 F.2d 1354, 1366 (11th Cir. 1989) (Eleventh Circuit upheld district court's declination to question juror under Rule 606(b) regarding alleged duress during deliberations because the "alleged harassment or intimidation of one juror by another would

not be competent evidence to impeach the ... verdict."); United States v. Casamayor, 837 F.2d 1509, 1515 (11th Cir. 1988) ("the alleged harassment or intimidation of one juror by another would not be competent evidence to impeach the verdict under Rule 606(b)..."). Accord United States v. Briggs, 2002 WL 1065841 (7th Cir. 2002) (affirming district court's denial of motion for new trial, under Rule 606(b), which was based on juror's allegations that she had been pressured to reach a verdict); United States v. Straach, 987 F.2d 232, 241-43 (5th Cir. 1993) (affirming lower court holding that, under Rule 606(b), since jury verdict cannot be challenged based on allegations of jurors that they had been forced to compromise on the verdict as a result of pressure from other jurors); United States v. Tallman, 952 F.2d 164, 166 (8th Cir. 1991) (affirming district court's denial of motion for new trial where juror alleged that he had been harassed to vote with the majority; "Rule 606(b) prohibits the use of statements from jurors that they felt pressure to reach a verdict").

In United States v. Camacho, 865 F. Supp. 1527 (S.D. Fla. 1994) (Judge Marcus), the Court refused to conduct inquiry into pressure exerted among jurors to reach a particular verdict because, under Rule 606(b), such pressure ***does not*** constitute an improper external influence on the jury. The Camacho court stated:

> Put simply, the suggestion that individuals encountered pressure from other jurors during their debates or that the jurors during their debates or that the jurors reached a compromise in the verdict that resulted from their debate is not something that this Court will interfere with, be it through an application for leave to interview jurors or on a motion for judgment notwithstanding the verdict on the basis of inconsistency.
>
> ****
>
> Although two jurors came forward after the verdicts had been returned and recorded, stating that they had maintained throughout the jury's deliberations that defendant was not guilty on all counts, but had been pressured into compromising their verdicts on counts tow and five, the "pressure" cannot count as an outside influence. *Citations omitted.*

Id. at 1532.

The Camacho court also analyzed Local Rule 11.1(e) and found that the Local Rule required "the moving party to satisfy the requirements of Rule 606(b) *before* a motion to interview jurors will be granted ... *Affidavits obtained in contravention of the local rule may be struck by the Court and disregarded."* Camacho, 865 F. Supp. at 1531, n.3 (emphasis added), citing Tanner, 483 U.S. at 126, 107 S. Ct. 2750. See also Diettrich v. Northwest Airlines, 168 F.3d 961 (7th Cir. 1998) (defense attorneys' conduct in contacting jurors after trial - without court's permission - to inquire into their deliberations and to support their motion to overturn verdict was "a serious transgression," "disturbing" and "clearly out of bounds," although it did not justify the affirmance of the jury's verdict as punishment; sanctions for such conduct should be addressed by the corresponding district court and State Board of Examiners).

The United States Supreme Court supports the Eleventh Circuit's rulings. In Tanner v. United States, 483 U.S. 107, 107 S. Ct. 2739 (1987), an appeal from the Eleventh Circuit, the Supreme Court held that the testimony of jurors regarding their deliberations should not be admitted even where there is an allegation of jury intoxication. The Tanner Court explained the legislative history of Rule 606(b) to hold that jurors cannot testify as to their conduct during deliberations, even in the extreme case of juror intoxication during deliberations, where such intoxication is not considered an "external influence." The Tanner court stated:

> Federal Rule of Evidence 606(b) is grounded in the common-law rule against admission of jury testimony to impeach a verdict and the exception for juror testimony relating to extraneous influences.

Id., at 121, 107 S. Ct. at 2748. The Supreme Court further stated that:

> ... the legislative history [of Rule 606(b)] demonstrates with uncommon clarity that Congress specifically understood, considered, and rejected a version of Rule 606(b) that would have allowed jurors to testify on juror conduct during deliberations, including juror intoxication.

Id. at 125, 107 S. Ct. at 2750. The Supreme Court emphasized the importance of not disturbing a jury verdict for events occurring during deliberations:

> There is little doubt that postverdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior. It is not at all clear, however, that the jury system could survive such efforts to perfect it. Allegations of juror misconduct, incompetency, or inattentiveness, raised for the first time days, weeks, or months after the verdict seriously disrupt the finality of the process.

Id. at 120, 107 S. Ct. at 2747.

The Florida Supreme Court has similarly held on Florida's equivalent to Rule 606(b). In Devoney v. State of Florida, 717 So. 2d 501 (Fla. 1998), the Florida Supreme Court held that testimony regarding jurors' discussions during trial about evidence that the court had instructed them to disregard inhered in the verdict and did not warrant new trial under Florida's Rule 606(b) equivalent. The Florida Supreme Court stated:

> [Juror affidavits] to avoid the verdict may not be received to show any matter which does essentially inhere in the verdict itself, as that the juror did not assent to the verdict; that he misunderstood the instructions of the Court; the statements of the witnesses or the pleadings in the case; that he was unduly influenced by the statements or otherwise of his fellow-jurors, or mistaken in his calculations or judgment, or other matter resting alone in the juror's breast.

Id. at 502.

In Baptist Hospital of Miami, Inc. v. Maler, 579 So.2d 97 (Fla. 1991), the Florida Supreme Court held that juror affidavits stating that their verdict was prompted by jury sympathy was not subject to judicial inquiry. The "reasons why jurors reached a particular verdict are subjective impressions or opinions that are not subject to judicial inquiry." Id. at 100. The Florida Supreme Court found that there was no agreement by the jurors to ignore the law nor did the jurors consider external evidence so as to allow the Court to investigate the jurors' affidavits. According to the Baptist Hospital court, the prohibition against juror interviews was formulated "in light of the strong

public policy against allowing litigants either to harass jurors or to upset a verdict by attempting to ascertain some improper motive behind it." Id.

See also Kriston v. Webster, 688 So. 2d 346, 348 (Fla. 5th DCA 1997) ("It is unfortunate that Webster's attorney did not seek the proper method to interview the jurors in this matter pursuant to Rule 4-3.5, Rules Regulating then Florida Bar. . . . Knowledge and observance of the rules regulating a lawyer's ethical conduct with respect to jury and court contacts is as important in the practice of the profession as knowing the substantive law. Ignorance or non-observance of those rules affects the reputation of the Bar and the individual lawyer who violates them.").

In Walgreens, Inc. v. Newcomb, 603 So. 2d 5 (Fla. 4th DCA 1992), the jury decided for the defendant at trial. After the trial concluded, the plaintiff's attorney telephoned a juror simply because the lawyer believed that the plaintiff should have won. The conversation proved fruitful since the plaintiff's attorney discovered that two jurors had conducted an experiment outside of the courtroom and the experiment was relied upon by the other jurors in making their decision. The plaintiff's attorney obtained affidavits from these jurors, informed the trial court, and as a result, the trial court relied on the affidavits, found that the jury may have been influenced by these matters, and ordered a new trial.

The Fourth District Court of Appeal disagreed and reversed the trial court. The Fourth District found that, "A request to interview a juror requires something more than conjecture and speculation by movant's counsel." Id. at 6. The Fourth District concluded:

> In making that telephone call, counsel violated two rules. Florida Rule of Civil Procedure 1.431(h) provides the procedure to be followed if a party believes that grounds for legal challenge to a verdict exist, and wants to interview a juror. The rule requires an order of the trial judge after notice and hearing. Rule 4-3.5(d)(4) of the Rules Regulating the Florida Bar provides that even if a lawyer believes that grounds exist to challenge a verdict, no interview of a juror may take place unless before the interview, the lawyer files notices of intention to interview a juror, and

-11-

> delivers copies to opposing counsel and the trial judge. None of these procedures were complied with. Nonetheless, the interview of the juror, conducted in violation of the Rules, produced results. Based upon what she learned, the attorney concluded that two members of the jury conducted an experiment outside of court using Windex, and communicated their findings to other members of the jury.

Id. The Fourth District reversed the new trial order finding that the trial court should not have relied on juror affidavits since they were obtained in violation of the Rules Regulating the Florida Bar:

> But here we are faced with the question of whether or not the trial judge should have considered the motion at all once he discovered that the information upon which it was based was obtained in direct violation of existing rules. The trial judge was presented with a motion to interview jurors which contained allegations of the out-of-court experiment. However, the facts supporting those allegations were obtained in violation of the Rules. ***A party ought not be able to obtain relief by violating the Rules when the relief could not be obtained by compliance with the Rules.***
>
> ***Once the trial judge found out the method by which the facts supporting the motions for interview and new trial were obtained, he should not have entertained the motions any further.***

Id. (emphasis added).

As the above cases show, the Court should strike the jurors' affidavits and Ms. Mouring's affidavit. Coercion of jurors by co-jurors is an internal influence which, under Fed. R. Evid. 606(b), cannot be investigated or relied upon by a district court to impeach a jury verdict. Moreover, Plaintiff's counsel used unethical and improper means to obtain Ms. Thorpe's and Mr. Thomas' affidavits and statements. Finally, attorney Mouring's affidavit is simply a third-party hearsay declaration by a lawyer who lacks personal knowledge of the facts about the deliberations. Accordingly, the Court should strike all juror affidavits submitted by Plaintiff's counsel.

## II.    THE COURT SHOULD SANCTION PLAINTIFF'S COUNSEL.

The actions fo Mr. Burton and Ms. Mouring mandate sanctions. Mr. Burton's conduct throughout both trials was unprofessional, rude, and disgraceful. Now, through a fishing expedition, Plaintiff's counsel have contacted jurors, discussed with them excluded evidence, and convinced the

jurors to provide affidavits attesting as to jury deliberation details and that they would have decided differently had they known about the excluded evidence.

If the Rules Regulating the Florida Bar and this Court's Local Rules mean anything, they must promote and defend the professionalism and ethics of Florida lawyers. A lawyer should only use the law's procedures for legitimate purposes, and should demonstrate respect for the legal system and for those who serve the legal system, including judges, attorneys, and jurors. Plaintiff's counsel's actions in contacting jurors post-trial are a blatant transgression of our ethics as lawyers. Accordingly, Target requests that the Court sanction Plaintiff's counsel in this matter.

## **CONCLUSION**

Defendant, TARGET CORPORATION, requests that the Court enter an Order enjoining Plaintiff's attorneys from further contacting jurors, striking the affidavits and statements of jurors, and sanctioning Plaintiff's counsel for their deliberate violations.

Respectfully submitted,

SHUTTS & BOWEN LLP
Attorneys for Defendant
1500 Miami Center
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 358-6300
Facsimile: (305) 347-7386

By: _____
Sheila M. Cesarano
Florida Bar Number 708364
Mary Ruth Houston
Florida Bar Number 834440
Sidney C. Calloway
Florida Bar Number 790982
Rene Gonzalez-LLorens
Florida Bar Number 0053790

-15-

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served by facsimile and U.S. mail on this 7 day of June 2002, to:

Richard J. Burton, Esq.
Richard J. Burton & Associates, P.A.
18305 Biscayne Boulevard, Suite 300
Miami, Florida 33160.
Tel: (305) 705-0888
Fax: (305) 935-9542
Attorney for Plaintiff

OF COUNSEL

MIADOCS 522237.1MED