# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 00-6107-CIV-FERGUSON/SNOW

STEVE HARRIS,

      Plaintiff,

v.

DAYTON HUDSON CORPORATION
d/b/a TARGET STORES,

      Defendant.

_____/

NIGHT BOX
FILED

JUN 19 2002

CLARENCE MADDOX
CLERK, USDC/SDFL/FTL



## DEFENDANT'S RESPONSE TO PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, *ET AL.,* MOTION TO STRIKE FOR BREACH OF RULES OF CIVIL PROCEDURE, AND INCORPORATED MEMORANDUM OF LAW

Defendant, TARGET CORPORATION ("Target"), responds to Plaintiff STEVE HARRIS' ("Plaintiff") Renewed Motion for Judgment as a Matter of Law, *et al.* ("Plaintiff's Motion"), and also moves to strike Plaintiff's Motion because Plaintiff did not comply with Fed. R. Civ. P. 50, this Court's Rules, and the Rules of Professional Conduct.

## SUMMARY OF ARGUMENT

Plaintiff's *24-page* Motion should be denied and stricken because it (1) misconstrues the law, (2) misrepresents the evidence to the Court, (3) is untimely under Fed. R. Civ. P. 50, and (iv) is a blatant violation of S.D. Fla. L.R. 7.1 and 11.1(e), Rule 4-3.5 (d)(4) of the Rules of Professional Conduct, and Fed. R. Evid. 606(b). In Plaintiff's counsel's desperation to overturn the jury verdict, he presents issues not previously raised at trial, has unethically contacted jurors and obtained statements from the jurors behind the Court's back, and lists a litany of "facts" that are untrue and based on misrepresentations. For the reasons discussed below, the Court should deny Plaintiff's Motion.

## **ARGUMENT**

**I.    PLAINTIFF'S MOTION SHOULD DE DENIED AND STRICKEN BECAUSE HE FAILED TO TIMELY PRESENT A RULE 50(A) MOTION AT TRIAL.**

Plaintiff alleges that he timely moved under Rule 50 at trial.  (Pl.'s Motion at 1.) Plaintiff's allegation is untrue.

As the Court will recall, and the Record reflects, the only time that Plaintiff made a Rule 50 motion was *after* the jury commenced its deliberations and *after* the jury sent the Court the second note which stated that the jury deliberations had reached an impasse. At that point, Plaintiff's counsel first moved for a mistrial and, in the alternative, for a "directed verdict" against Target.

Rule 50(a)(2) states that, "Motions for judgment as a matter of law may be made at any time *before submission of the case to the jury.*  Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment." Fed. R. Civ. P. 50.

Plaintiff should not be allowed to disregard the requirements of Rule 50 by making an untimely motion.  Moreover, Plaintiff should not be allowed to misrepresent to the Court that he made a timely motion when, in reality, he did not.  Accordingly, the Court should deny and strike Plaintiff's Rule 50 motion because it was not made before submission of the case to the jury and is, therefore, untimely.

**II.    PLAINTIFF HAS NOT PRESENTED ANY EVIDENCE TO OVERTURN THE JURY'S VERDICT OR ORDER A NEW TRIAL UNDER RULES 50(B) OR 59.**

To grant judgment as a matter of law under Rule 50(b), the Court must determine that there is such overwhelming evidence in favor of Plaintiff that a reasonable and fair-minded juror could not arrive at a contrary verdict.  See Carter v. City of Miami, 870

SHUTTS & BOWEN LLP

MIAMI        FORT LAUDERDALE        WEST PALM BEACH        ORLANDO        TALLAHASSEE        AMSTERDAM        LONDON

F.2d 578, 581 (11th Cir. 1989). The Court must "draw all reasonable inferences in favor of the nonmoving party [*i.e.,* Target], and it may not make credibility determinations or weigh the evidence ." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149-50 (2000). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Id. at 150. Consequently, the Court "must disregard all evidence favorable to the moving party that the jury is not required to believe." Id. at 151.

Granting a motion for new trial under Rule 59 is within the discretion of the trial court. See United States Equal Employment Opportunity Commission v. W & O, Inc., 213 F.3d 600, 610 (11th Cir. 2000). Motions for a new trial may be grounded on the claim that there were "substantial errors in ... instructions to the jury" or the "verdict is against the weight of the evidence." Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940).

When a new trial is sought on the basis of insufficient evidence under Rule 59, the Court should grant a motion for a new trial *only* when the verdict is *against the clear weight of the evidence.* Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir. 2001). In cases where the Court's granting of a new trial is based on the evidence introduced at trial, the Eleventh Circuit has mandated an even higher standard: *"the great – not merely the greater – weight of the evidence."* Id. The Eleventh Circuit explains:

> Because it is critical that a judge does not merely substitute his judgment for that of the jury, "new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great--not merely the greater--weight of the evidence."

Id. In cases involving the "the great – not merely the greater – weight of the evidence" legal standard, the Court's discretion to set aside a jury verdict is very narrow. Id.; see also

SHUTTS & BOWEN LLP

MIAMI       FORT LAUDERDALE       WEST PALM BEACH       ORLANDO       TALLAHASSEE       AMSTERDAM       LONDON

Hewitt v. B.F. Goodrich Co., 732 F.2d 1554, 1559 (11th Cir. 1984) ("The trial judge's discretion to set aside a jury verdict based on the great weight of the evidence is very narrow.")

This Circuit cautions that the district court should "not simply substitute [its] judgment for that of the jury, thus depriving the litigants of their right to trial by jury." Conway v. Chemical Leaman Tank Lines, 610 F.2d 360, 362-63 (5th Cir. 1980). Consequently, "new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great not merely the greater weight of the evidence." Id. at 362-63.

In this case, Plaintiff has not provided any evidence sufficient to overturn the jury's verdict under Rule 50 or demonstrate that the verdict is against the "great weight of the evidence" under Rule 59. Plaintiff argues that, in his opinion, the evidence he presented is "more believable" than the evidence that Target presented, and, thus, the jury should have made a credibility determination for Plaintiff.

Needless to say, Plaintiff does not have a valid argument to grant a new trial under either Rules 50 or 59 simply because he disagrees with the jury's conclusion and considers his evidence to be "better." Plaintiff is asking the Court to simply substitute its own judgment for that of the jury and make credibility determinations, which, as the Eleventh Circuit has repeatedly pointed out, is improper. Plaintiff is asking the Court to speculate as to what a juror "may" have concluded and to disregard what the jury did find. In fact, Plaintiff is asking to disregard the same findings that *two separate juries have concluded* in this case. By substituting its own judgment for that of the jury as Plaintiff suggests, the Court will deprive Target of its Constitutional right to trial by jury. See Lipphardt, 267 F.3d

at 1186 ("[I]t is critical that a judge does not merely substitute his judgment for that of the jury"); <u>Hewitt</u>, 732 F.2d at 1559 (11th Cir.1941) ("[T]o assure that the judge does not simply substitute his judgment for that of the jury, ... we have noted that new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great--not merely the greater--weight of the evidence."); <u>Conway</u>, 610 F.2d at 363. Accordingly, the Court should deny Plaintiff's Motion.

## III.   THE COURT SHOULD DISREGARD PLAINTIFF'S UNSUBSTANTIATED ARGUMENT OF JURY RACISM.

Plaintiff seeks to overturn the jury verdict because "Members of the jury panel made racial inferences and exhibit racial bias and predisposed racial opinions towards the African American jurors." (Pl.'s Motion at 15.) The Court should deny Plaintiff's arguments for four (4) reasons.

First, Plaintiff bases his argument on one hearsay statement from a juror (Gregory Thomas) and one juror affidavit (Gwen Thorpe), both of which were obtained in a blatant violation of the Rules of Professional Conduct and this Court's Rules. As set forth in Target's Emergency Motion to Enjoin Plaintiff's Counsel from Unethical Conduct (filed on June 7, 2002), Plaintiff's counsel contacted jurors and obtained juror affidavits and statements in violation and deliberate disregard of Rule 4-3.5 (d)(4) of the Rules of Professional Conduct, Local Rule 11.1(e), and Fed. R. Evid. 606(b). (<u>See</u> Target's <i>Emergency</i> Motion to Enjoin Plaintiff's Counsel from Unethical Conduct for argument and citations in support.) Moreover, Plaintiff's counsel obtained these statements and affidavits by surreptitiously revealing evidence excluded by the Court to the jurors, and asking the jurors to speculate whether their decision would have differed if they would have known

about the inadmissible evidence. If the Rules of Professional Conduct and this Court's Local Rules mean anything, the Court should not allow Plaintiff to overturn a jury verdict on information his attorneys obtained through prohibited and unethical contact with jurors behind the Court's back.

Second, assuming *arguendo* that Plaintiff is allowed to disregard Rule 4-3.5 (d)(4) of the Rules of Professional Conduct, Local Rule 11.1(e), and Fed. R. Evid. 606(b), the Eleventh Circuit has repeatedly held that coercion of jurors by co-jurors (what Plaintiff complains of) is an ***internal*** influence which cannot be investigated or relied upon by a district court to impeach a jury verdict. In fact, the Eleventh Circuit finds that it is reversible error for the Court to consider the internal influences to overturn a jury verdict. United States v. Prosperi, 201 F.3d 1335, 1340-41 (11th Cir. 2000); See also United States v. Norton, 867 F.2d 1354, 1366 (11th Cir. 1989) (upholding district court's declination to question juror under Rule 606(b) regarding alleged duress during deliberations because the "alleged harassment or intimidation of one juror by another would not be competent evidence to impeach the . . . verdict."); United States v. Casamayor, 837 F.2d 1509, 1515 (11th Cir. 1988) ("the alleged harassment or intimidation of one juror by another would not be competent evidence to impeach the verdict under Rule 606(b)"). Accord United States v. Briggs, 2002 WL 1065841 (7th Cir. 2002) (affirming district court's denial of motion for new trial, under Rule 606(b), which was based on juror's allegations that she had been pressured to reach a verdict); United States v. Straach, 987 F.2d 232, 241-43 (5th Cir. 1993) (affirming lower court holding that, under Rule 606(b), since jury verdict cannot be challenged based on allegations of jurors that they had been forced to compromise on the verdict as a result of pressure from other jurors); United States v. Tallman, 952 F.2d 164,

166 (8th Cir. 1991) (affirming district court's denial of motion for new trial where juror alleged that he had been harassed to vote with the majority; "Rule 606(b) prohibits the use of statements from jurors that they felt pressure to reach a verdict"). <u>See also United States v. Norton</u>, 867 F.2d 1354, 1366 (11th Cir. 1989) (stating that harassment or duress of one juror by another juror is not competent evidence to impeach a jury verdict, as there is no extraneous pressure present); <u>United States v. Camacho</u>, 865 F.Supp. 1527, 1538 (S.D. Fla. 1994) (court may only examine allegations of external influence over a juror).

Third, Plaintiff alleges that jurors made "racial references and exhibited racial bias and predisposed racial opinions towards African-American jurors." (Pl.'s Motion at 15.) However, this conclusion is unsubstantiated. Neither Ms. Thorpe's affidavit nor Mr. Thomas' statement evidence racism in the jury deliberations. Ms. Thorpe simply states that she was one of the hold out jurors and was called "bullheaded" and "pigheaded" because she would not change her opinion. (Thorpe Aff. at 1.) Plaintiff's self-serving statement of racism is unsubstantiated even by his improperly and unethically obtained affidavits and statements.

Fourth, Plaintiff's cases do not support his proposition. The decision in <u>Arizona v. Washington</u>, 434 U.S. 497 (1978) is not applicable since the Supreme Court was considering comments made by a prosecutor during opening statements regarding a prior criminal trial. The decision in <u>United States v. Richardson</u>, 817 F.2d 886 (D.C. Cir. 1987) is also distinguishable since the court simply found that the trial court had not committed error by failing to admonish the jury not to discuss the case when they left jury deliberations. In <u>United States v. Heller</u>, 785 F.2d 1524 (11th Cir. 1986), the jury sent out a note to the trial court informing of racial comments made during the jury deliberation

SHUTTS & BOWEN LLP

MIAMI        FORT LAUDERDALE        WEST PALM BEACH        ORLANDO        TALLAHASSEE        AMSTERDAM        LONDON

(*e.g.*, a juror stated, "Well the fellow we are trying is a Jew. I say, 'let's hang him;'" and comments about rabbis and Jewish names), as well as jury discussion of the evidence with outside accountants. Unlike <u>Heller</u>, no evidence of racial comments were made in this case or discussions were held with non-jurors. Moreover, the information of racial comments in <u>Heller</u> was obtained through the foreperson's note to the judge, and not through the unauthorized and unethical contacts of an attorney with jurors.

For the reasons set forth above, the Court should deny Plaintiff's Motion.

## IV.    <u>THE "ALLEN" CHARGE INSTRUCTION WAS PROPER.</u>

Plaintiff complains that the trial court erred by giving the "Allen" charge instruction because it "created turmoil, a hostile environment, and forced prejudicial decisions against Plaintiff." (Pl.'s Motion at 16.) Plaintiff claims that, pursuant to the information his attorneys unethically obtained, the "jury foreman convinced the jurors that they would not be 'permitted to leave and return to their lives until a verdict was reached.'" <u>Id.</u> Plaintiff is wrong.

The Court correctly gave the jurors a civil version of the Allen charge instruction when the jurors notified the Court that they had reached an impasse. <u>See Allen v. United States</u>, 164 U.S. 492 (1896). As the Supreme Court stated, this Court is allowed to encourage the jury to reach a verdict. The Court did not use any improper enforcement mechanism as Plaintiff states. Rather, the Court simply converted the criminal terminology in the Allen charge to reflect the civil nature of this case. <u>See Bhat v. Univ. of Cincinnati</u>, 2001 WL 1216975 (6th Cir. 2001) (utilizing a modified "Allen charge" in an employment discrimination case).

The Court did not "violate the law," as Plaintiff suggests, by asking the jury to

-8-

continue their deliberations.  In fact, the Court polled all the jurors to determine whether they wanted to continue deliberations, and all the jurors, in open court, affirmatively stated that they agreed to continue deliberations.  The decision to continue deliberations is within the broad discretion of the trial judge and is to be made in light of the relevant circumstances including the length of the deliberation.  See United States v. Kramer, 955 F.2d 479, 489-90 (7th Cir.), cert. denied sub nom., 506 U.S. 998 (1992) (finding no abuse of discretion where trial court denies motion for mistrial and instructed jury to continue deliberations); United States v. Green, 962 F.2d 938, 950 (9th Cir. 1992) (mistrial would have been premature where jury disclosed it was divided but did not indicate that further deliberations would be fruitless).

Moreover, the Court should deny Plaintiff's argument because it is based on information improperly and unethically obtained, as well as obtained by providing the jurors contacted *ex parte* with information about the evidence excluded by the Court. See Section III, *supra*.

Finally, the cases cited by Plaintiff are inapplicable.  The decision in McWhorter v. City of Birmingham, 906 F.2d 674 (11th Cir. 1990) has nothing to do with Plaintiff's allegations that jury confusion caused reversible error.  Rather, in McWhorter, the Eleventh Circuit affirmed the trial court's order granting new trial because the trial counsel made arguments in direct violation of the trial court's ruling.  The decision in United States v. Scott, 547 F.2d 334 (6th Cir. 1977) is also distinguishable because that case involved a trial court whose jury instruction went beyond the language adopted in the Allen charge instruction.  The decision in Illinois v. Somerville, 410 U.S. 458 (1973) is not applicable since that opinion involved a petition for *habeas corpus* where the Supreme Court held that

SHUTTS & BOWEN LLP

MIAMI        FORT LAUDERDALE        WEST PALM BEACH        ORLANDO        TALLAHASSEE        AMSTERDAM        LONDON

the trial court's grant of a mistrial based on the indictment's insufficiency to charge a crime was proper and not barred by the Double Jeopardy clause of the Fifth Amendment. The decision in <u>United States v. United Gypsum</u>, 550 F.2d 115 (3d Cir. 1997) is also not applicable since the language cited by Plaintiff was not in the majority opinion, but rather in a concurring opinion. Finally, the decision in <u>United States v. Frazin</u>, 780 F.2d 1461 (9th Cir. 1986) is distinguishable because it involved the court's failure to notify the parties or their counsel of the jury's deadlock vote, and involved the court's *ex parte* message to the jury to continue its deliberations.

For the foregoing reasons, the Court should find that the Allen charge instruction was properly given and deny Plaintiff's Motion.

## V.    VERDICT QUESTIONS 2 AND 3 ARE PROPER SINCE THEY WERE APPROVED BY THE ELEVENTH CIRCUIT.

Plaintiff complains that Questions 2 and 3 of the verdict form created jury confusion. Plaintiff's argument is unsupported by the law.

First, Plaintiff **did not object** to Questions 2 and 3 before the case was submitted to the jury. Since Plaintiff did not object, Plaintiff cannot complain of any error after the fact.

Second, Plaintiff cannot complain of Question number 2 because Plaintiff proposed this disputed question to the Court **in his proposed verdict form,** during the first trial.

Third, the trial judge has "wide discretion as to the style and wording employed" in jury instructions and verdict forms. <u>Farley v. Nationwide Mut. Ins. Co.</u>, 197 F.3d 1322, 1329 (11th Cir. 1999); <u>Carter v. DecisionOne Corp.</u>, 122 F.3d 997, 1005 (11th Cir.1997). The Eleventh Circuit reviews jury instructions and verdict forms together rather than

SHUTTS & BOWEN LLP

MIAMI        FORT LAUDERDALE        WEST PALM BEACH        ORLANDO        TALLAHASSEE        AMSTERDAM        LONDON

separately for reversible error. See Carter, 122 F.3d at 1005; McNely v. Ocala Star-Banner Corp., 99 F.3d 1068, 1072 (11th Cir. 1996). The reversal for plain error in the jury instructions and verdict form will occur "only in exceptional cases where the error is 'so fundamental as to result in a miscarriage of justice.'" Montgomery v. Noga, 168 F.3d 1282, 1294 (11th Cir. 1999) (citing Iervolino v. Delta Air Lines, Inc., 796 F.2d 1408, 1414 (11th Cir. 1986). To meet this stringent standard, a party must prove that the "challenged instruction or verdict form was an incorrect statement of the law and [that] it was probably responsible for an incorrect verdict, leading to substantial injustice." Id. at 1294.

**In this case, verdict questions 2 and 3 were taken verbatim from pages 62-63 of the Eleventh Circuit's Pattern Jury Instructions.** Plaintiff has not presented a single case which supports the proposition that the verdict questions, approved by the Eleventh Circuit (and not objected to by Plaintiff) are an incorrect statement of the law. As stated above, the verdict form cannot be considered by the Court without considering the jury instructions. Farley, 197 F.3d at 1330-31. In this case, the jury instructions – which were taken from the Eleventh Circuit's Pattern Jury Instructions – properly restate the law.

Fourth, Plaintiff's argument that the verdict form undermines McDonnell Douglas and its progeny is incorrect, since the tests set forth in these cases are inapplicable at trial. As the Eleventh Circuit explained:

> The McDonnell Douglas stages are simply a method of analysis for organizing a discrimination case in its initial stages to determine if a case has enough evidence to reach a jury in the first place. As the Supreme Court has explained, this framework is "'merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.'" United States Postal Serv. Bd. v. Aikens, 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983) (quoting Furnco Construction Corp. v. Waters, 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978)). The Supreme Court reiterated this instruction recently in Hicks, directing that once the McDonnell Douglas framework has been met by both parties in the

-11-

pretrial stages, it "simply drops out of the picture" when the jury begins its deliberations.  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

This approach is well-founded since the McDonnell Douglas framework has become a complicated legal doctrine, and there is a strong likelihood of jury confusion over its individual components.  As we have observed, "[a]lthough statements [like 'prima facie case' and 'burden of production'] faithfully endeavor[ ] to track the three-step formulation of McDonnell Douglas..., they create[ ] a distinct risk of confusing the jury." Dudley v. Wal-Mart Stores, Inc., 166 F.3d 1317, 1322 (11th Cir. 1999). . . . For this reason, we clearly have directed that juries should not be instructed on the McDonnell Douglas framework. See Dudley, 166 F.3d at 1322 (observing that it is "unnecessary and inappropriate to instruct the jury on McDonnell Douglas analysis"). Three of our sister circuits have adopted a similar position. . . .  The trial court's decision to not instruct the jury on McDonnell Douglas therefore was proper.

Farley, 197 F.3d at 1333.  Hence, Plaintiff's suggestion that the McDonnell Douglas framework should have been used instead of the questions found in the Eleventh Circuit's Pattern Jury Instructions is patently wrong.

For the above reasons, the Court should deny Plaintiff's Motion since verdict Questions 2 and 3 properly restated the law in the Eleventh Circuit.

## VI.    TARGET MET ITS BURDEN OF PRODUCTION UNDER THE *MCDONNELL DOUGLAS* FRAMEWORK.

Plaintiff alleges that Target did not prove its affirmative defenses by demonstrating that Plaintiff was terminated for a legitimate, nondiscriminatory reason as required by the McDonnell Douglas framework.  (Pl.'s Motion at 19-20.)  Plaintiff is wrong.

Target bears no burden of proof under the McDonnell Douglas/Burdine framework, but rather only a burden of production. The United States Supreme Court has clearly and repeatedly ruled that the burden borne by defendants under the McDonnell Douglas/Burdine framework is a *burden of production, and not a burden of proof:*

SHUTTS & BOWEN LLP

MIAMI        FORT LAUDERDALE      WEST PALM BEACH      ORLANDO      TALLAHASSEE      AMSTERDAM      LONDON

> *The ultimate burden of persuading the trier fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff* . . . We have stated consistently that the employee's *prima facie* case of discrimination will be rebutted if the employer articulates lawful reasons for the action; that is, to satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus. The court of appeals would require the defendant to introduce evidence which, in the absence of any evidence of pretext, would *persuade* the trier of fact that the employment action was lawful. This exceeds what properly can be demanded to satisfy a burden of production.

Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). The United

States Supreme Court expressly reaffirmed Burdine in other opinions:

> Our holding casts no shadow on <u>Burdine</u>, in which we decided that, *even after a plaintiff has made out a prima facie case of discrimination under Title VII, the burden of persuasion does not shift to the employer to show that its stated legitimate reason for the employment decision was the true reason*.

Price Waterhouse v. Hopkins, 490 U.S. 228, 260 (1989) (emphasis added).

Moreover, the United States Supreme Court's decision in St. Mary's Honor Center

v. Hicks, 509 U.S. 502 (1993), makes clear that a jury's disbelief of the defendant's

explanation does not compel judgment for the plaintiff. Id. at 509. Hicks is completely

inconsistent with any notion of the defendant bearing a burden of proving its

nondiscriminatory explanation.

The Eleventh Circuit has followed the law articulated by the U.S. Supreme Court:

> The Supreme Court recently clarified the Title VII disparate treatment framework in <u>St. Mary's Honor Center v. Hicks</u>. In our earlier cases, once the defendant met its burden of *production* and rebutted the plaintiff's *prima facie* case, the plaintiff could carry the ultimate burden of *persuasion* either with evidence demonstrating that the defendant was more likely than not motivated through a discriminatory reason or that the defendant's nondiscriminatory reason was not worthy of belief. *Hicks makes clear that the fact-finder's disbelief of the reasons the defendant offers does not compel judgment for the plaintiff.* Rather, once the defendant has met its

-13-

> **burden of production**, the McDonnell Douglas/Burdine framework becomes irrelevant; the sole inquiry is whether the plaintiff successfully carries the **burden of persuading** the trier of fact that the defendant engaged in intentional discrimination on the basis of a prohibited factor.

Walker v. Nations Bank of Florida, 53 F.3d 1548, 1557 (11th Cir. 1995) (emphasis added).

The Eleventh Circuit has consistently identified the defendant's obligation under the McDonnell Douglas framework as a burden of production. See Denney v. City of Alabama, 247 F.3d 1172, 1182 (11th Cir. 2001) ("once these elements [a *prima facie* case] are established, the defendant has the burden of producing a legitimate, nondiscriminatory reason for the challenged employment action"); Holifield v. Reno, 115 F.3d 1555, 1564 (11th Cir. 1997) (stating that "once the plaintiff has established a *prima facie* case . . . the burden is on the defendant to rebut this inference by presenting legitimate, nondiscriminatory reasons for its employment actions.").

Target met its **burden of production** when it proffered a nondiscriminatory reason for Plaintiff's termination (*e.g.*, violations of numerous corporate policies and submitting a fraudulent restaurant receipt). However, because Target does not bear the burden of proof as to the reasons that it terminated Plaintiff, the Court should deny Plaintiff's Motion.

## VII.    THE COURT PROPERLY EXCLUDED MS. KNAPP'S DEPOSITION.

During trial, Plaintiff's counsel introduced Caryn Knapp's written statement in support of his case-in-chief. Instead of calling or subpoenaing Ms. Knapp during his case-in-chief, Plaintiff waited until rebuttal and asked the Court to be allowed to read Ms. Knapp's deposition. However, Plaintiff never subpoenaed Ms. Knapp and the testimony was cumulative. The Court denied Plaintiff's request. Plaintiff now complains that the Court erred by not allowing him to introduce the testimony of Caryn Knapp.

-14-

Plaintiff's argument fails because Plaintiff did not subpoena Ms. Knapp for this trial. Fed. R. Civ. P. 32 governs the use of depositions in court proceedings and states in relevant part:

> The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: (a) that the witness is dead; or (b) that the witness is at a greater distance than 100 miles from the place of the trial or hearing, or is out of the United States, unless it appears that the absence of the witness was procured by the party offering the deposition; or (c) that the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment; or (d) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or (e) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.

Fed. R. Civ. P. 32,  In this case, Plaintiff did not provide any affidavit attesting that he had tried to serve Ms. Knapp but was unable.  In fact, as the Record reflects, Target's attorney objected at trial as to Plaintiff's lack of evidence showing proof of service, and the Court agreed. Moreover, undersigned counsel contacted Ms. Knapp immediately before the trial commenced and was informed by Ms. Knapp that Plaintiff had not tried to subpoena her.

What is truly egregious is that Plaintiff misrepresents to the Court that Ms. Knapp was subpoenaed by him in this case.  (Pl.'s Motion at 22.)  This is an untruth.  As the Record reflects, Plaintiff did not produce any affidavit at trial.  Pursuant to our conversations with Ms. Knapp, she was never subpoenaed.  Moreover, Plaintiff's accusation that counsel purposefully hid Ms. Knapp to prevent her from testifying is another blatant lie and, as such, merits no further response.

Also untrue is Plaintiff's allegation that Target's counsel "promised" to have Ms. Knapp appear during trial.  As the Record reflects, Target's counsel objected to this misrepresentation during trial, and the Court agreed with Target that it had only offered to

-15-

produce Messrs. Fankhauser and Hasting (both of whom are residents of other states) so as to avoid wasting the Court's and jury's time by reading their depositions.

The Court properly found that after a week of testimony, the deposition section that Plaintiff wanted to introduce was cumulative. It is well-established that "use of a deposition at trial is discretionary with the trial judge, and the judge's decision will not be overturned except for abuse of that discretion." Bobb v. Modern Products, 648 F.2d 1051 (5th Cir. 1981). In this case, the Court did not abuse its discretion in determining that Ms. Knapp's deposition should not be introduced as rebuttal evidence.

## VIII. THE COURT CORRECTLY FOUND THAT THE FEE TARGET PAID TO JOE MURPHY WAS IRRELEVANT.

Plaintiff states that the Court erred by not allowing testimony that Mr. Gillespie reduced the fee paid to Mr. Murphy when Target hired Plaintiff in 1994. Plaintiff claims that this information, which relates to the time that Plaintiff was hired five years before Plaintiff's adverse action, evidenced discrimination.

The Court correctly determined that such evidence was irrelevant to this case. Mr. Murphy testified during the first trial that Mr. Gillespie would typically negotiate the fee amount Target paid to people that Mr. Murphy recruited. This is not a case involving a failure to hire an African-American. **_Clearly, Plaintiff was hired and, in fact, promoted._** Rather, this case involved Plaintiff's termination five years after his hiring. The Court correctly found that the evidence was irrelevant and, even if relevant, its prejudicial effect outweighed any probative value.

-16-

IX.    **THE COURT PROPERLY BIFURCATED THIS CASE.**

Plaintiff states that the Court erred when it bifurcated this case.  (Pl.'s Motion at 23.)

However, the Court properly bifurcated the issues of liability and damages.  Rule 42(b)

states in relevant part:

> The court, in furtherance of convenience or to avoid prejudice, or when
> separate trials will be conducive to expedition and economy, may order a
> separate trial of any claim. . . .

Fed. R. Civ. P. 42(b).  Pursuant to Rule 42(b), the Court may order separate trials on the

grounds of convenience or to avoid prejudice to a party.  Id.  The Court may also consider

whether separate trials will contribute to the expeditious and economical adjudication of the

cause, as well as avoid confusion to the jury and avoid inconsistent jury verdicts.  See

Authors' Comments to Fla. R. Civ. P. 1.270 (substantial equivalent to Rule 42(b)).

The Court has broad discretion in the interest of effective judicial administration to

order separate trials pursuant to Rule 42(b).  These factors were succinctly reported in

Larsen v. Powell, 16 F.R.D. 322, 323 (D. Colo. 1954) (granting separate trials under Fed.

R. Civ. P. 42(b)).   The Larson court stated:

> These [factors] include convenience or economy of time relating to the
> parties or their witnesses; the convenience and economy of the Court; the
> possibility that by a determination of one issue the trial of the other issues
> would be avoided; the degree of repetition that might be involved in
> determining the issues separately or whether the issues most conveniently
> could be determined together; whether both issues could be determinable by
> a jury or whether one could be a matter solely within the cognizance of the
> Court; and, finally, whether the trying of the issues together would
> necessarily work prejudice against one or the other of the parties, which
> would not be avoided by proper instructions.

Id. at 323.

In the instant case, the Court properly found that the introduction of evidence as to

the amount of damages and expert testimony should be separated from liability.  First,

separate trials contribute to the expeditious and economical adjudication of the cause. In fact, when this trial commenced, the Court was informed by Plaintiff's counsel that his case-in-chief would be completed within that week. However, by the following week, Plaintiff was still presenting his case-in-chief. Second, separate trials simplified and clarified the proceedings, permitted a more orderly disposition of the case, and avoided jury confusion. Third, damages testimony would have unfairly prejudiced Target in that Plaintiff's testimony would have been presented to improperly incite jury sentiment. Fourth, the Court properly decided to hold separate trials in the interest of judicial economy. Should the jury have determined that Target was liable, the Court would have not wasted any resources since a separate trial is required to determine the amount of punitive damages. See W.R. Grace & Co. v. Waters, 638 So. 2d 502 (Fla. 1994).

By trying only liability issues, the Court avoided undue repetition and prejudicial evidence intended only to incite the jury, while promoting the expeditious adjudication of the liability issue. Moreover, since the jury concluded that Target was not liable, the Court avoided undue expense and time. Accordingly, the Court properly bifurcated the issues of liability and damages in this case.

## X. THE COURT SHOULD STRIKE PLAINTIFF'S MOTION BECAUSE IT MISREPRESENTS THE SERVICE DATE, EXCEEDS THE PAGE LIMITS, AND VIOLATES THIS COURT'S AND THE FLORIDA BAR'S RULES.

Plaintiff's counsel certified that Plaintiff's Motion was served to undersigned counsel "by mail [on the] 31st day of May, 2002." (Pl.'s Motion at 25.) This is an untruth. The envelope enclosing Plaintiff's Motion reveals that it was mailed on June 3, 2002, *three days after Plaintiff's certification date* as to service on Target's counsel. See Ex. A, Envelope.

-18-

Both Local Rule 5.2 and Fed. R. Civ. P. 5 mandate that Plaintiff's counsel truthfully certify when he mailed Plaintiff's Motion. S.D. Fla. L.R. 5.2; Fed. R. Civ. P. 5. In this case, Plaintiff deliberately ignored the Rules and made a deliberate misrepresentation on his certificate of service. An attorney must maintain a high standard and not mislead the Court by lying on the certificate of service.

Plaintiff's counsel also violated Local Rule 7.1, which requires that the memorandum filed by a party must not exceed 20 pages. In this case, Plaintiff's Motion is 24 pages long (excluding the certificate of service page).

In the aggregate, and as explained in prior Sections, Plaintiff has violated **(i)** S.D. Fla. L.R. 5.1, **(ii)** S.D. Fla. L.R. 7.1, **(iii)** S.D. Fla. L.R. 11.1, **(iv)** Fed. R. Civ. P. 5, **(v)** Rule 4-3.5 (d)(4) of the Rules of Professional Conduct, and  **(vi)** Fed. R. Evid. 606(b). Clearly, Plaintiff's counsel's violations are beyond the pale. Accordingly, Plaintiff's Motion should be stricken for all of Plaintiff's counsel's violations of the Court's Rules.

## XI.    THE COURT SHOULD STRIKE PLAINTIFF'S MISREPRESENTATIONS OF THE FACTS.

Plaintiff's Motion misrepresents many of the facts, some of which are discussed in the above sections, in an attempt to present a more alluring argument for a new trial. For example, Plaintiff claims that "Plaintiff and Defendant objected to continued deliberations" by the jury when the jury submitted the second note indicating that they had reached an impasse. (Pl.'s Motion at 2.)  This is incorrect. Target **never** objected to continued deliberations, and indeed suggested to the Court the appropriateness of a civil "Allen charge" instruction.  Furthermore, Plaintiff also alleges that, "During the trial, the Defendant's two claimed investigators, *admitted* that they had performed no investigation."

SHUTTS & BOWEN LLP

MIAMI        FORT LAUDERDALE        WEST PALM BEACH        ORLANDO        TALLAHASSEE        AMSTERDAM        LONDON

(Pl.'s Motion at 3.)  This is untrue.  Don Fankhauser and Doug Barth (the only two loss prevention investigators) both testified that they conducted an investigation, spoke to employees, obtained statements, and analyzed the statements and testimony.  Target requests that the Court strike Plaintiff's misrepresentations of the facts, and to sanction him.

## **CONCLUSION**

Defendant, TARGET CORPORATION, requests that the Court deny Plaintiff's Motion, and for such other relief as the Court deems proper and necessary.

Respectfully submitted,

SHUTTS & BOWEN LLP
Attorneys for Defendant
1500 Miami Center
201 South Biscayne Boulevard
Miami, Florida  33131
Telephone:  (305) 358-6300
Facsimile:  (305) 347-7386

By: _____
     Sheila M. Cesarano
     Florida Bar Number 708364
     Mary Ruth Houston
     Florida Bar Number 834440
     Sidney C. Calloway
     Florida Bar Number 790982
     Rene Gonzalez-LLorens
     Florida Bar Number 0053790

SHUTTS & BOWEN LLP

MIAMI      FORT LAUDERDALE      WEST PALM BEACH      ORLANDO      TALLAHASSEE      AMSTERDAM      LONDON

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was mailed on this ___/9___ day of June 2002, to:

Richard J. Burton, Esq.
Richard J. Burton & Associates, P.A.
18305 Biscayne Boulevard, Suite 300
Miami, Florida 33160.
Tel: (305) 705-0888
Fax: (305) 935-9542
Attorney for Plaintiff


OF COUNSEL

MIADOCS 522775.1 RGL

-21-

# <u>EXHIBIT A</u>

RICHARD J. BURTON & ASSOCIATES, P.A.

ATTORNEYS AT LAW
18305 BISCAYNE BLVD.
SUITE 300
MIAMI, FLORIDA 33160

Rene Gonzalez-Llorens
SHUTTS & BOWEN LLP
1500 Miami Center
201 South Biscayne Blvd.
Miami, FL 33131

EXHIBIT

A